ROBERT P. GOE - State Bar No. 137019
ELIZABETH A. LAROCQUE – State Bar No. 219977
**GOE & FORSYTHE, LLP**
18101 Von Karman Ave., Suite 510
Irvine, CA 92612
rgoe@goeforlaw.com
elarocque@goeforlaw.com

Telephone: (949) 798-2460
Facsimile: (949) 955-9437

Proposed Attorneys for Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>COBALIS CORPORATION, a Nevada corporation,<br><br>Debtor and<br>Debtor-in-Possession. | Case No **8:07-bk-12347-TA**<br><br>In a Case Under Chapter 11 of the Bankruptcy Code<br>(11 U.S.C. § 1101 et seq.)<br><br>**DISCLOSURE STATEMENT DESCRIBING DEBTOR'S CHAPTER 11 PLAN DATED AUGUST 3, 2009**<br><br>**Disclosure Statement Hearing**<br><br>DATE: September 9, 2009<br>TIME: 10:00 a.m.<br>CTRM: 5-B<br>411 West Fourth Street<br>Santa Ana, CA<br><br>**Plan Confirmation Hearing**<br><br>DATE: [To Be Set]<br>TIME:<br>CTRM: 5-B<br>411 West Fourth Street<br>Santa Ana, CA |

# I.

## INTRODUCTION

Cobalis Corporation ("Cobalis" or "Debtor"), a Nevada Corporation, is the Debtor in this Chapter 11 Bankruptcy Case. On August 1, 2007, Petitioning Creditor YA Global Investments LP ("YAGI") commenced a bankruptcy case by filing an involuntary Chapter 7 petition against Cobalis under the United States Bankruptcy Code ("Code").

Cobalis subsequently moved to convert the case to a Chapter 11 reorganization case which was granted by the Court. Chapter 11 allows the Debtor, and under some circumstances, creditors and other parties-in-interest, to propose a plan of reorganization (the "Plan"). The Plan may provide for Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. Debtor is the party proposing the Plan sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

This is a reorganizing plan. In other words, Debtor seeks to pay all of its creditors 100% of their allowed claims under the Plan through monthly payments to be made over the next 60 months that will be funded by earnings from the sale of its products and from the sale of stock to the public. The Effective Date of the proposed Plan is thirty (30) days after the order confirming the Plan is entered.

### A.    Purpose of This Document

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

(1)    WHO CAN VOTE OR OBJECT TO THE PROPOSED PLAN,

(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS

**TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD**
**RECEIVE IN LIQUIDATION,**

(3)  **DEBTOR'S HISTORY AND SIGNIFICANT EVENTS DURING THE**
**BANKRUPTCY,**

(4)  **WHAT THINGS THE COURT WILL LOOK AT TO DECIDE**
**WHETHER OR NOT TO CONFIRM THE PLAN,**

(5)  **WHAT IS THE EFFECT OF CONFIRMATION, AND**

(6)  **WHETHER THIS PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan's provisions will govern.

The Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plan. The Bankruptcy Court ("Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party-in-interest can now solicit votes for or against the Plan.

**B.  Deadlines For Voting and Objecting; Date of Plan Confirmation Hearing**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THE CASE.

**1.  Time and Place of the Confirmation Hearing**

The hearing where the Court will determine whether or not to confirm the Plan will take place at _____ am/pm on _____ 2009, Courtroom 5-B, 411 West Fourth Street, Santa Ana,, CA 92701.

**2.     Deadline For Voting For Or Against The Plan**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to Goe & Forsythe, LLP, to the attention of William Goletz, 18101 Von Karman Avenue, Suite 510, Irvine, California 92612, Telephone (949) 798-2460 Facsimile (949) 955-9437.

Your ballot must be received by Mr. Goe by the deadline set by the Court or it will not be counted.

**3.     Deadline for Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon Goe & Forsythe, LLP, to the attention of Robert P. Goe, 18101 Von Karman Avenue, Suite 510, Irvine, California 92612, by the deadline set by the Court.

**4.     Identity of Person to Contact For More Information Regarding The Plan**

Any interested party desiring further information about the Plan should contact Goe & Forsythe, LLP, to the attention of Robert P. Goe, 18101 Von Karman Avenue, Ste. 510, Irvine, California 92612; Telephone (949) 798-2460.

**C.     Disclaimer**

The financial data relied upon in formulating the Plan is based on Debtor's post-petition financial documents and financial projections. The information contained in this Disclosure Statement is provided by Debtor. The information was not audited or reviewed by an independent accountant and Debtor is unable to warrant or represent that such financial information is without any inaccuracies, although Debtor believes it has made reasonable efforts, under the circumstances, to present fairly and accurately, such financial information. The Debtor represents that everything stated in the Disclosure Statement is true to the Debtor's best knowledge. The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

**General Plan Payout Provisions**.   Debtor's Plan comprises a proposed payout to creditors over a period of time in fixed monthly installments. It is Debtor's intent to pay all

1  creditors 100% of their allowed claim which may be agreed upon by the creditors and the
2  Debtor or may be determined by the Court if the Debtor disputes the amount of any claim.

## II.

## BACKGROUND

**A.    Description and History of the Debtor's Business**

The Debtor is a publicly traded (OTC BB:CLSC) corporation organized under the laws of Nevada. The Debtor is in the business of developing, manufacturing and marketing over-the-counter medications used by consumers to treat common allergies. No significant sales have ever been booked by the Debtor as until now its products have been in the developmental process and are currently now ready to bring to market. Attached hereto as Exhibit A and incorporated herein by this reference is a true and correct copy of Debtor's *Go-to-Market Strategy and Programs for Pre-Histin – the World's First Pre-Histamine together with the Medical Placement Plan and On-line Media Placement* (collectively "Marketing Plan"). The Market Plan describes how Debtor's product Pre-Histin will be brought to market and generate revenues along with stock sales to pay all creditors in full. The Marketing Plan includes a detailed history of the Debtor and is incorporated herein by reference.

Debtor's primary assets are its patents which only have substantial value if Debtor can utilize them in operating its business.

**B.    Principals/Affiliates of Debtor's Business**
Chairman of the Board (Emeritus) – Rudy Radovich

Members of the Board of Directors:
  Chas Radovich
  Kevin Prendeville
  Carlos Tejeda
  Jack Basch

5

President – Chas Radovich

Treasurer – Carlos Tejeda

Secretary - Chas Radovich

**C.      Management of the Debtor Before and After the Bankruptcy**

All of the above listed individuals served in the same capacity before the bankruptcy filing except for Carlos Tejeda who joined Cobalis after the filing of the petition.

**D.      Events Leading to the Chapter 11 Filing**

Funding of Cobalis was done through the issuance of securities and convertible debt to the public. This is the usual and customary practice of research and biotech industry companies when they are in a developmental phase with no finished products to sell to ultimate users but have patents for products that can provide significant upside for potential investors.

On December 20, 2006, Cobalis entered into a convertible debenture agreement with secured creditor YAGI in the amount of $3.85 million. On April 23, 2007 YAGI exercised it rights to 1,333,333 shares ( the "Series A Warrants") at an exercise price of $0.75 per share for a total of $1 million.

Over the term of its Agreement with Debtor, YAGI converted its debt to equity and thereafter liquidated its entire position of Cobalis common stock by selling 15,400,000 shares of Cobalis in the public markets. As a result of the sale of securities, there is an offset due YAGI which has reduced the amount of the obligation due to YAGI by $1.5 million to a reduced outstanding principal due to the amount of $2.3 million. YAGI has also claimed additional interest, costs and penalties for an amount to be determined by the Court. Absent a settlement, Debtor intends to file an objection to YAGI's proof-of-claim, # 6.

**E.      Significant Events During the Bankruptcy**

**1.      Bankruptcy Proceedings**

During the pendency of this case, Debtor has sold Common A shares of stock to fund the case and make a $300,000 deposit required by the Court.

The following is a chronological list of significant events which have

occurred during this case.

On August 1, 2007, an involuntary Chapter 7 petition was filed. On October 17, 2007, Debtor file a Motion to Convert the case to Chapter 11 which motion was approved by Order entered on November 16, 2007. Thereafter, on December 5, 2007, Debtor filed its Schedules and Statement of Financial Affairs and other related documents.

On January 29, 2008, YAGI filed its first motion to convert to Chapter 7 which motion was subsequently withdrawn on July 30, 2008.

On February 22, 2008, an Order was entered employing Winthrop Couchot as General Bankruptcy Counsel. Winthrop Couchot subsequently withdrew from the case.

On May 29, 2008, a Bar Date motion was filed setting a bar date to file claims as September 15, 2008.

On September 30, 2008, Debtor filed its motion to enter into a licensing agreement with MDC which Debtor later withdrew after determining such was not in the best interests of the estate.

On November 4, 2008, the United States Trustee filed a motion to convert the case which motion was later withdrawn.

On December 3, 2008, YAGI filed its second motion to convert the case, which motion also was later withdrawn.

On December 11, 2008, Debtor filed an Application to Employ the Law Offices of T. Edward Malpass as General Bankruptcy Counsel which Application was approved by Order entered on February 24, 2009.

On December 15, 2008, Debtor filed a motion for Order authorizing Manufacturing, Distribution, and Adequate Protection Agreement with YAGI which motion was approved by Order entered February 5, 2009.

On April 16, 2009, YAGI filed its third motion to convert the case to Chapter 7 which motion was subsequently taken off calendar subject to YAGI's right to put the motion back on calendar.

On June 8, 2009, YAGI filed a Motion to Compel Rule 30(b)(6) motion which was originally heard on July 13, 2009, and is now scheduled for rehearing on August 12, 2009, to be held together with Debtor's Status Conference.

The Court also ordered the Debtor to file its Chapter 11 Plan and Disclosure Statement by August 3, 2009 with a Disclosure Statement hearing date of September 9, 2009. YAGI and the United States Trustee can reset their respective conversion motions they filed if notice is filed by August 7, 2009 for hearing on August 12, 2009.

On July 22, 2009, YAGI filed a motion to appoint an examiner which motion is scheduled for hearing on August 12, 2009. Debtor will be opposing the motion.

On July 31, 2009, Goe & Forsythe, LLP filed its Application to be Employed as replacement counsel which Application is set for hearing on August 5, 2009.

### 2. Other Legal Proceedings

Debtor has pending litigation with Jim Luce concerning his employment and other issues. Debtor contends that it has no exposure and in fact Mr. Luce owes the bankruptcy estate in excess of $2,000,000. Debtor intends to pursue this claim vigorously post-confirmation.

Debtor also has litigation pending against Innofood, Inc., Modafood, Randall Lanham, and others, which matters Debtor also intends to litigate. Debtor also intends to object to the above-referenced claims filed by such parties.

### 3. Actual and Projected Recovery of Preferential or Fraudulent Transfers

Debtor has a potential preference claim against Gryphon Master Fund – LP ("Gryphon") concerning the timing of the recordation of its judgment.

### 4. Procedures Implemented to Resolve Financial Problems

This is a reorganizing Chapter 11. Debtor has been negotiating settlement agreements with the secured creditors and the unsecured creditors which will hopefully resolve their claims without further litigation..

Instead of obtaining funding exclusively through the sale of securities or loans — as has

been true in the past -- Cobalis is beginning the direct marketing of its flagship prehistamine product by preparing an aggressive nation-wide marketing campaign via the internet and television in local markets where there are high concentrations of allergy sufferers. Viewers will be able to order directly by telephoning an "800" number and will also be directed to the website of Cobalis through which orders can be placed. Payments can be made by credit card directly to Cobalis. A storyboard of the television commercial, a layout of the website, and a tentative schedule of commercial participations in various local television markets is provided in the Exhibit A Marketing Plan.

Debtor is filing a Plan of Reorganization proposing that all creditors will be paid their allowed claims in full over a 60 month period beginning after the Effective Date.

### 5. Current and Historical Financial Conditions

Attached hereto collectively as Exhibit D and incorporated herein by this reference are true and correct copies of the Debtor's Monthly Operating Reports ("MOR") since March, 2008.

As previously explained, Cobalis has never before received revenues from the sale of any product, but has secured funding exclusively through the issuance of securities and borrowing. Thus the MORs are historical statements and do not reflect the future plans of Cobalis where funding will be realized both from the sale of products to consumers and the sale of common shares to investors.

Attached collectively hereto as Exhibit B and incorporated herein by this reference are Debtor's Five-year Projections ("Projections") including detailed breakdowns of Fixed Marketing Expenses, General and Administrative Expenses, Direct Response Television ("DRTV") Expenses, Call Orders, Web Site Orders, and Balance Calculations. The Projections show that Debtor's Profits shall be as follows:

| | |
|---|---|
| Year One: | $ 1,519,173 |
| Year Two: | $ 2,351,632 |
| Year Three: | $ 3,936,065 |
| Year Four: | $ 6,374,007 |
| Year Five: | $10,101,407 |

Attached hereto as Exhibit C and incorporated herein by this reference are the Assumptions with Formulas used in the Financial Projections ( "Assumptions").

Debtor estimates that the total amount of all Allowed Claims (Administrative, Priority, Secured, and Unsecured) will approximate not more than $5,000,000. Based on Debtor's Projections, Debtor will be able to easily pay all of the Allowed Claims in full provided time is allowed to ramp up the business.

Finally, Debtor has a $46,500,000 Net Operating Loss carryforward ("NOL") which will be used to offset taxes on any post-confirmation income.

## III.

## SUMMARY OF THE PLAN

**A.      What Creditors and Interest Holders Will Receive Under the Proposed Plan**

As required by the Code, the Plan classifies claims and interests in various classes according to their right to priority. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

**B.      Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtor has not placed the following claims in a class.

1.      **Administrative Expenses**

Administrative expenses are claims for costs or expenses of administrating Debtor's Chapter 11 case which are allowed under Section 507(a)(1). The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists all of Debtor's Section 507(a)(1) administrative claims and their treatment under the Plan.

| NAME | AMOUNT OWED | TREATMENT |
|------|-------------|-----------|
| Goe & Forsythe, LLP Debtor's Attorneys | $100,000.00 (estimated) | Paid in full on Effective Date subject to Court approval |
| Winthrop Couchot | $50,000 (estimated) | Paid in full on Effective Date subject to Court approval |
| Law Office of T Edward Malpass | unknown | Paid in full on Effective Date subject to Court approval |
| Clerk's office fees | to be determined | Paid in full on Effective Date |
| Office of U.S. Trustee Fees | to be determined | Paid in full on Effective Date |

Court Approval of Fees Required

The Court must rule on all attorneys' fees listed in this chart before the fees will be owed by the Debtor. For all fees except the Clerk's Office fee and the United States Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

As indicated above, the Debtor will need to pay approximately $150,000 of administrative claims on the Effective Date of the Plan[1].

2.    **Priority Tax Claims**

Priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8). The Code requires that each holder of such a Section 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five (5) years after the date of the Order for relief plus interest at the statutory rate. The following chart lists all of Debtor's Section 507(a)(8) priority tax claims and their treatment under the Plan:

///

///

///

---

1 The IRS may have an administrative claim of $33,711.25. Debtor is investigating.

| DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|
| Priority claims:<br><br>As set forth in Exhibit E attached hereto and incorporated herein by this reference, Debtor believes the total Internal Revenue Service ("IRS") claim will approximate $62,499. and all other taxing authorities will approximate $57,000. Debtor is in negotiations with all taxing agencies to resolve the claims. | N | To be paid with statutory interest of IRS 6621(a) (currently 4%) over sixty (60) months from the date of the Order for relief in monthly payments. Upon default there will be full reinstatement of IRS' administrative collection powers and rights, as they existed prior to the bankruptcy. Should the debtor default, the IRS will give written notice. If the default is not cured within 30 days, the IRS may declare a default and all remaining payments due under the plan are accelerated and become all due and payable. |

C. **Classified Claims and Interests**

1. **Classes of Secured Claims**

A secured claim is a claim secured by a consensual lien on property of the estate. The following chart lists all classes of Debtor's secured pre-petition claims and their treatment under this Plan.

| Class #1 | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---|---|---|---|---|
| YAGI | Secured Claim fully secured by | N | Y | To be paid monthly a total of 100% of |

| | | | | |
|---|---|---|---|---|
| all assets of Debtor.<br><br>Amount of Claim # 6 is $3,000,000 which Debtor believes may be lower. Debtor will object to claim if settlement not reached. | | | | allowed pre-petition claim with post-petition interest of 4% amortized over sixty (60) months and retain its pre-petition lien |

| Class #2 | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---|---|---|---|---|
| Gryphon | Obtained a judgment within 90 days of the filing of the petition in the approximate amount of $1,600,000. Debtor disputes the claim as Gryphon breached settlement agreement and recorded the lien within the Preference Period. Debtor will object to claim if settlement not reached. | N | Y | To be paid monthly a total of 100% of allowed pre-petition claim with post-confirmation interest of 4% amortized over sixty (60) months |

**2.      Class of Priority Unsecured Claims**

Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claim.

| Class of Priority Unsecured Claims | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---|---|---|---|---|
| NONE | | | | |

Debtor is not aware of the existence of any claims under Bankruptcy Code Sections 507(a)(3), (a)(4), (a)(5), (a)(6) and (a)(7). The Schedules will be amended to reflect the same.

**3.      Class of General Unsecured Claims**

General unsecured claims are unsecured claims not entitled to priority under Section 507(a). The following chart identifies the Plan's treatment of the class containing all of Debtor's allowed general unsecured claims. (See Exhibit F for detailed information about each general unsecured claim.)

| Class #3 | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---|---|---|---|---|
| See Exhibit F attached hereto and incorporated herein by this reference | Debtor estimates the total of the Class 3 general unsecured claims will approximate $1,000,000 after all objections are resolved | N | Y | To be paid monthly a total of 100% of allowed pre-petition claim with post-confirmation interest of 3% amortized over sixty (60) months |

**4.      Class of Interest Holders**

Debtor is a publicly traded company with Common A Class shares issued. All shareholders shall retain all rights they currently hold and are not impaired under the Plan.

**D. Means of Effectuating the Plan**

**1.      Funding**

The plan will be funded by the Debtor as follows:

      A.   income from Operations as set forth in the Projections;

      B.   sale of Common shares of Debtor;

      C.   recovery of any funds from currently pending litigation; and

      D.   commitment from Chaim Stern to fund Plan (See Exhibit G hereto)

**2.      Post-Confirmation Management**

Chairman of the Board (Emeritus) – Rudy Radovich

Members of the Board of Directors:
   Chas Radovich
   Kevin Prendeville
   Carlos Tejeda
   Jack Basch

President – Chas Radovich

Treasurer – Carlos Tejeda

Secretary - Chas Radovich

Debtor is holding a Board of Directors Meeting on August 10, 2009.

**3.      Disbursing Agent**

The Reorganized Debtor shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan. The disbursing agent shall serve without bond and shall not be compensated for distribution services rendered and expenses incurred pursuant to the Plan.

**E.    Risk Factors**

The proposed Plan has the following risks:

1. Earnings from the sale of products may fall short due to lack of demand and/or higher than anticipated costs of manufacturing and marketing. Any shortfall from current projections may affect the ability of the Debtor to make the payments scheduled under the proposed Plan. See Exhibit A (the Marketing Plan).

2.    While the Debtor believes that its prehistamine product has significant and meaningful competitive advantages over existing anti-histamine products, there is the risk that competitive new products may be developed that could have an adverse impact on the sales of Debtor's product.

3.    The ability of consumers to purchase Debtor's product is dependent upon the availability of discretionary income to fund their purchases. Should a declining economy have an adverse effect on the total amount of consumer discretionary spending, this could reduce the availability of funds for consumers to use for the purchase of Debtor's product.

4.    It is possible that new laws and regulations may limit the advertising claims that Debtor may use in its marketing efforts. This could limit the persuasive appeal of Debtor's product thereby reducing sales and income that Debtor plans to use to make payments under the Plan.

5.    Debtor does not know of or anticipate any non-bankruptcy litigation that may have an adverse effect upon its ability to raise the funds required to make the payments under its proposed Plan.

6.    The marketplace for the securities of Debtor may contract and this may negatively affect the raising of equity and debt capital that Debtor is counting upon to make payments under the Plan.

7.    Members of the management team may not remain in place and this may negatively affect the ability of Debtor to raise funds to make payments under the Plan and to have their resources of skills and expertise to manufacture and market Debtor's product.

**F.  Other Provisions of the Plan**

    **1.  Executory Contracts And Unexpired Leases**

        **a.  Assumptions**

The following are the unexpired leases and executory contracts to be assumed as obligations of the Reorganized Debtor under this Plan.

    NONE

        **b.  Rejections**

On the Effective Date, the following executory contracts and unexpired leases will be rejected:

    NONE

    **2.  Changes in Rates Subject To Regulatory Commission Approval**

This Debtor is not subject to governmental regulatory commission approval of the prices that it charges for its product, unless there is a significant change in the regulations affecting the pricing of over-the-counter medications.

    **3.  Retention of Jurisdiction**

The Court will retain jurisdiction to the extent provided by law and to the extent as set forth in the Plan and as explained herein *infra*.

**G.  Tax Consequences of The Plan**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS AND/OR ADVISORS. The Debtor CANNOT and DOES NOT represent what tax consequences may result from the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action, if any.

# IV.

## CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The Debtor CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan. Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible. These requirements are <u>not</u> the only requirements for confirmation.

## A. Who May Vote or Object

### 1. Who May Object To Confirmation Of The Plan

Any party in interest may object to the confirmation of the Plan, but as explained below, not everyone is entitled to vote to accept or reject the Plan.

### 2. Who May Vote on Confirmation Of The Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both: (1) allowed or allowed for voting purposes; and (2) classified in an impaired class.

#### a. What Is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. It is the intention of Debtor to file objections to multiple secured and unsecured claims. Those claims to be disputed are identified, *infra*. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing,

either overrules the objection or allows the claim or interest for voting purposes. Prior to the Confirmation hearing, the Debtor plans to file objections to the claims of the disputed creditors shown in Exhibit E and F attached hereto.

The **Bar Date** for filing a Proof of Claim in this case was September 15, 2008. A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if: (1) it is scheduled on Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated; and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest. Please refer to Exhibits E and F hereto to see how the Debtor has characterized your claim.

### b.      What Is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is <u>impaired</u> under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

In this case, the Debtor believes that all classes of creditors (Class 1, Class 2, and Class 3) are impaired and are therefore entitled to vote to accept or reject the Plan. Parties who dispute the Debtor's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Debtor has incorrectly characterized the class.

Class 4 Interest Holders are not impaired as they are retaining all rights they currently possess.

### 3.      Who Is <u>Not</u> Entitled To Vote

The following four (4) types of claims are <u>not</u> entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(1), (a)(2), and (a)(8) are not entitled to vote because such claims are not placed in classes and they are required to received certain

treatment specified by the Bankruptcy Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

Class 4 is unimpaired.

**4.      Who Can Vote In More Than One (1) Class**

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

**5.      Votes Necessary To Confirm The Plan**

If impaired classes exist, the Court cannot confirm the Plan unless: (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class; and (2) all impaired classes have voted to accept the Plan, unless that Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section IV.A.8.

**6.      Votes Necessary for a Class To Accept The Plan**

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan. A class of interests is considered to have "accepted" the Plan when at least two-thirds (2/3) in dollar amount of the interest-holders of such class which actually voted, voted to accept the Plan.

**7.      Treatment of Non-Accepting Classes**

As noted above, even if all impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner required by the Code. The process by which non-accepting classes are forced to be bound by the terms of a Plan is commonly referred to as "cramdown." The Code allows the

Plan to be "crammed down" on non-accepting classes of claims or interests if it meets all consensual requirements except the voting requirements of Section 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in Section 1129(b) and applicable case law.

**8.     Request For Confirmation Despite Non-Acceptance by Impaired Class(es)**

The Party proposing this Plan will ask the Court to confirm the Plan by cramdown on Class 1, Class 2, and Class 3 creditors if any of those classes do not vote to accept the Plan.

**B.     Liquidation Analysis**

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, a Chapter 7 trustee usually sells a debtor's assets. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm the Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan

as such holders would receive under a Chapter 7 liquidation. The Plan's proponent maintains that this requirement is met here for the following reasons:

The secured claims are being paid as provided for in the Code or by agreement. All secured creditors are impaired but only as to the term payout on the arrearages, otherwise, they are being paid pursuant to their contractual terms. Debtor is paying all secured and unsecured creditors one hundred percent (100%) of their allowed claims.

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation (this information is provided by Debtor).

## ASSETS VALUED AT LIQUIDATION VALUES

| CURRENT ASSETS | |
|---|---|
| a.   Cash On Hand | Apprx. $ 210,264 |
| b.   Property (patents) | Apprx. $ 458,180 |
| c.   Litigation Claims | unknown |
| | |
| **TOTAL CURRENT ASSETS** | **$668,444** |
| | |
| Less:  Secured Claims | $(2,300,000) |
| Less: Chapter 7 trustee's fees and expenses (estimated) | $(    50,000) |
| Less: Chapter 11 administrative expenses | $(   150,000) |
| Less: Priority claims, excluding administrative claims | $(   142,000) |
| Less:  UST fees and clerk fees | $(        500) |
| Less: Debtor' claimed exemptions | $(          0) |
| **(1) Balance for unsecured claims** | **$(          0)** |
| | |
| **(2) Total amount of unsecured claims** | **Approx. $1,000,000** |
| | |
| **% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CHAPTER 7 LIQUIDATION:** | 0% |
| **% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER THIS PLAN:** | 100% |

Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under a Chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE | PAYOUT PERCENTAGE IN CHAPTER 7 |
|---|---|---|

|                              | PLAN | LIQUIDATION     |
| ---------------------------- | ---- | --------------- |
| Administrative Claims        | 100% | 0%              |
| Priority Tax Claims          | N/A  | 0%              |
| Class 1 – YAGI               | 100% | Less than 100%  |
| Class 2 – Gryphon            | 100% | 0%              |
| Class 3 - Allowed unsecured claims. | 100% | 0%       |

**C.      Projected Income and Expenses for First Six Months Post-Confirmation.**

Debtor will pay the secured and the unsecured creditors from the revenues from the sale of the Debtor's products and from the sale of stock.

**D.      Proposed Deadlines For Claims and Objection to Claims.**

The deadline for filing Proofs of Claim in this case was September 15, 2008

The deadline for objecting to claims is not yet set, but Debtor will request such a date at the Confirmation hearing.

**E.      Feasibility.**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two (2) important aspects of a feasibility analysis. The first aspect considers whether Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date. There is approximately $210,000 in the Debtor-in-Possession account. The Debtor maintains that this aspect of feasibility is satisfied as illustrated here:

Administrative Claims to be paid by Debtor                          To be
                                                                    determined

The second aspect considers whether the Debtor will have enough cash over the 60 month life of the Plan to make the required monthly Plan payments.

The monthly payments to all creditors will be paid from the sale of products and the sale of Common A shares of stock. The Debtor's marketing program provides for more than sufficient revenues to make all payments under the Plan. Please refer to Exhibits A and B attached hereto.

## V.

## EFFECT OF CONFIRMATION OF PLAN

**A.      Discharge**

This Plan provides that upon confirmation of the Plan, Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan to the extent specified in Section 1141. However, the discharge will not discharge any liability imposed by the Plan.

**B.      Revesting Of Property In Debtor**

The confirmation of the Plan revests all of the property of the estate in Debtor.

**C.      Modification Of The Plan**

The proponent of the Plan may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or re-voting on the Plan.

The proponent of the Plan may also seek to modify the Plan at any time after confirmation only if: (1) the Plan has not been substantially consummated; <u>and</u> (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**D.      Property Free and Clear of Claims**

Except as provided herein to the contrary, all property distributed under the Plan shall be distributed free and clear of all Claims of all Claimants, Interest Holders, parties-in -interest and other entities.

**E.      Post-Confirmation Status Report**

Within one-hundred twenty (120) days of the entry of the Confirmation Order, the Debtor shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the Office

of the United States Trustee, the twenty (20) largest unsecured creditors, and those parties who have requested special notice. Further status reports shall be filed every one- hundred twenty (120) days and served on the same entities.

**F.     Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under Section 1112(b), after the Plan is confirmed, if there is a default in Debtor's performance of the Plan. If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The Order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the Order if the Order of confirmation was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation within 180 days after entry of the order of confirmation. The ability of any party-in-interest to challenge any claim shall not be affected by the Order of confirmation but is limited to one year from the date of the Order allowing a contested claim and is without limit for an uncontested claim as set forth in Federal Rule of Bankruptcy Procedure rule 9024.

**G.     Binding Effect of the Plan**

Once approved, the provisions of this Plan shall be binding upon each Claimant and Interest Holder, whether or not the Claim of such Claimant or Interest of such Interest Holder is impaired under the Plan, and whether or not such Claimant or Interest Holder has accepted the Plan. No action may be taken by any secured creditor to foreclose on the Properties, or any portion thereof, unless and until this case is either dismissed or converted to one under Chapter 7.

**H.     Final Decree**

Once the estate has been fully administered as referred to in Federal Rule of Bankruptcy Procedure 3022, the Plan Proponent, or such other party as the Court shall

designate in the Plan confirmation order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case.

**I.      Retention of Jurisdiction**

Notwithstanding Confirmation, the Court shall retain jurisdiction for all of the following purposes plus such other purposes as may be provided by the Code:

1.   The determination of requests for payment of Claims entitled to priority under Section 507(a)(1);

2.   The resolution of any disputes regarding the interpretation, enforcement, breach, performance and/or a default under this Plan;

3.   The implementation, execution or consummation of the provisions of this Plan (and any dispute with regard thereto) and entry of orders in aid of consummation or enforcement of this Plan, including without limitation, appropriate Orders to effect the provisions of this Plan and to protect the Disbursing Agent from Creditors' actions;

4.   Objections to any claims filed;

5.   Determination of any avoidance action;

6.   The adjudication of any challenge to an allowed Claim by any party-in-interest based on evidence as may be obtained subsequent to the confirmation of the Plan. The Debtor reserves the right to challenge thusly all allowed Claims subsequent to the entry of the Order of Confirmation.

7.   The modification of this Plan pursuant to Section 1127; and

8.   The entry of a final decree closing this Chapter 11 case.


**GOE & FORSYTHE, LLP**

Dated: August 3, 2009

By:_____
Robert P. Goe
Proposed Attorneys for Debtor and
Debtor-in-Possession

# DECLARATION OF CHASLAV RADOVICH

I, Chaslav Radovich, hereby declare:

1.      I am the Chief Executive Officer of Debtor and Debtor-in-Possession herein (the "Debtor"). I have personal knowledge of the facts stated herein, and if called upon to testify, I could and would competently and truthfully testify thereto.

2.      I have personal knowledge of the Debtor's operations and assisted in the preparation of the Debtor's Disclosure Statement Describing Debtor's Chapter11 Plan (the "Disclosure Statement").

3.      All statements and representations made in the Disclosure Statement are truthful and accurate to the best of my knowledge.

I declare under penalty of perjury under the laws of the state of California and United States of America, that the foregoing is true and correct

EXECUTED this ___1___ day of _____ August 2009 at _Nvin_ , California.

_____
Chaslav Radovich