FILED

AUG 3 0 2010

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

Rey Olsen
Appearing *In Propria Personna*
For secured creditor, Montenegrex, a sole proprietorship
P. O. Box 7022
New York, NY 10150-7022
WSGNY@aol.com
917 701-1101.

# UNITED STATES BANKRUPTCY COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# (SANTA ANA DIVISION)

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

| | |
|---|---|
| In re | Case No. 8:07: 12347-TA |
| COBALIS CORP., a Nevada corporation, ) | Chapter 11 Proceeding |
| ) | |
| Debtor. ) | Hon. Theodor C. Albert |

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

## Memorandum of Law

## In Support of Motion of Creditor Montenegrex

## to disallow the secured claim of Creditor YA Global Investments LLC

New York, NY

August 26, 2010

Respectfully submitted,

/s

Montenegrex, a sole proprietorship

By: Rey Olsen

*In Propria Persona*

# TABLE OF CONTENTS

**Page**

Table of Authorities                                                                          iv

Questions Presented                                                                          1

Authority                                                                                         2

Statement of Relevant Facts                                                             3

ARGUMENT                                                                                    4

(A)     This Court lacks *subject matter jurisdiction* because
Yorkville Global Investors LLC was,  unlawfully,  the *sole*
petitioning secured creditor when it made a Chapter 7 filing
against Cobalis on August 1, 2007.                                                    4

  1.     While a sole creditor can initially file with joinder
of 2 more creditors with unsecured claims, the *Code* does not allow
a *single* petitioner  to file when the debtor has more than 12 creditors,
nor for any fully  secured creditor to file at all.                                  4

  2.     The filing of a Chapter 7 petition requires *3 creditors*
*all* with *undisputed, unsecured* claims; otherwise there is no
subject matter jurisdiction.                                                            6

  3.     The entire claim of YAGI, secured and unsecured, was
subject to a *bona fide* dispute and thus could not be used as the
basis of a Chapter 7 filing.                                                             7

  4.     YAGI's use of the Gryphon enforcement action as a
reason to make a Chapter 7 filing is barred under New Jersey law
by the doctrine of *estoppel in pais.*                                             8

  5.     Montenegrex, immediately after dismissal of this case
for lack of subject matter jurisdiction, can ask the Sheriff to execute
the writ of attachment issued by J. Selna of the Central District Court
and seize all of the personal property of Cobalis in satisfaction            9
of its perfected judgment with statutory interest thereon.

ii

(B)    Montenegrex as the successor-in-interest to Gryphon,
a non-petitioning creditor in the Chapter 7 case filed by YAGI,
seeks damages against YAGI under 11 USC §303(i)(2),
for YAGI's improper, bad-faith filing of the petition.    10

     1.    This is a case of first impression in which a ruling on the
issue at hand was invited by the 9th Circuit.    10

     2.    YAGI had an improper purpose not allowable under
11 USC § 303 to make a Chapter 7 filing against Cobalis.    10

(C)    If this Court does find subject matter jurisdiction, YAGI does
not have a *secured* claim against Cobalis because YAGI never perfected
its security interest as prescribed by applicable New Jersey law that the
parties agreed would control their agreements.    12

(D)    If YAGI has a secured claim against Cobalis it is not inferior
to Gryphon's secured claim since  YAGI *was actually aware* of the
Gryphon judgment before YAGI made its UCC-1 filing in Nevada.    13

     1.    Because YAGI was aware of the pre-existing Gryphon
judgment, California law makes any security interest of YAGI
subordinate to the claim of Gryphon.    13

     2.    Gryphon perfected its lien by service on Cobalis of an Order
to Appear (ORAP) for a debtor examination.    14

     (3)    The rights of Montenegrex are unaffected by the dismissal
of this case or a discharge in bankruptcy.    15

(E)    The granting by Cobalis of a security interest in all of its property
in December 2006 to YAGI was a *fraudulent transfer* under 11 *USC*
§ 548(1) that the Trustee should be compelled to avoid.    16

     1.    Because YAGI had *actual knowledge* of Gryphon's judgment
entered in Texas in March 2006, YAGI engaged in a fraudulent
transfer to deny Gryphon the ability to collect upon its judgment.    16

iii

2.      The Trustee therefore must be compelled to avoid any
security interest of YAGI that occurred *within 2 years* of the
August 1, 2007 filing date of the petition that is detrimental
to Montenegrex.                                                      18

(F)    YAGI's claim should be disallowed under binding New
Jersey law because YAGI prevented Cobalis from performing its
contract with YAGI.                                                 20

        1.      Because Cobalis was in its developmental stages with no
prospect of immediate sales revenues, its only way of redeeming
the debentures it sold to YAGI was to sell additional shares
to the public.                                                      20

        2.      So as not to impede its ability to sell shares to redeem
the debentures, Cobalis obtained a representation from YAGI
that it would never short sell shares of Cobalis during the term
of the debentures.                                                  20

        3.      YAGI ignored its promise not to sell short, thereby
violating a material term of the agreement.                        21

        4.      This Court is thus constrained to find that YAGI
breached a material term of the agreement when YAGI
sold millions of shares of Cobalis *short* violating its explicit
promise not to do so.                                              21

        5.      By selling millions of shares short, YAGI caused
the value of the publicly traded shares to decline precipitously
thereby *preventing* Cobalis from performing.                      23

(G)    The parties, under New Jersey law, must be restored to their
*status quo ante* to be sure that YAGI does not permanently keep a
benefit derived by its inequitable conduct.                        25

(H)    YAGI's unclean hands bars any recovery.                     25

Conclusion                                                          26

iv

# TABLE OF AUTHORITIES

**Page**

**Federal Statutes and Rules**

11 *USC* § 303                                      6

11 *USC* § 303(b)                                 4,5

11 *USC* § 303(i)                                  27

11 *USC* §303(i)(2)                                 1

11 *USC* § 548(1)                                1, 16

11 *USC* § 548 (a)(1)(A):                          19

*FRBP* Rule 9019                                    4

**State Statutes and Rules**

*California Code of Civil Procedure* § 697.590(b)    14

*N. J. S. A.* 12A:9-501                           12, 13

*UCC*-1                                           1, 13

**Cases**

*Binks v. DSL.net, Inc.*
WL 1713629, 13 (Del.Ch. 2010)                       5

*Directions, Inc. v. New Prince Concrete Const. Co., Inc.*
200 N.J.Super. 639, 643  (N.J.Super.A.D. 1985.)    23, 24

*In re Allen-Main Associates, Ltd. Partnership*
218 B.R. 278, 280 (Bkrtcy.D.Conn. 1998)             5

*In re BDC 56 LLC*
330 F.3d 111, 119 (2nd Cir. 2003)                   8

*In re Fox*  1994

WL 484596, 3 (N.D.Ill.,1994)                                          6

*In re Franchise Pictures LLC*
  389 B.R. 131, 141 (Bkrtcy.C.D.Cal. 2008)                           15

*In re Garrett*
  315 B.R. 431, 438 (Bkrtcy.E.D.Tex. 2004)                           6

*In re Griffin*
  204 B.R. 308, 309 (Bkrtcy.D.R.I. 1997)                             15

*In re Lull*
  386 B.R. 261, 270 (Bkrtcy.D.Hawai'i, 2008)                         17

*In re Miles*
  430 F.3d 1083, 1094 (9th Cir. 2005)                                10

*In re Pace Trustee of Pace Irrevocable Trust*
  376 B.R. 334, 338 (Bkrtcy.M.D.Fla. 2007)                           11

*In re Reid*
  107 B.R. 79, 83 (Bkrtcy.E.D.Va. 1989)                              11

*Johnson v. Yellow Cab Transit Co.*
  321 U.S. 383, 387                                                  26

*Kontrick v. Ryan*
  540 U.S. 443, 456 (2004)                                           2

*Keystone Driller Co. v. General Excavator Co.*
  290 U.S. 240, 245                                                  26

*Mag Instrument, Inc. v. JS Products, Inc.*
  595 F.Supp.2d 1102, 1110 (C.D.Cal. 2008)                           26

*Muller v. Thomann*
  104 N.J. Eq. 289 (N.J.Ch. 1929)                                    9

*Overstock.com, Inc. v. Gradient Analytics, Inc.*

151 Cal.App.4th 688, 694 (1 Dist. 2007)                                    22

*Precision Inst. Mfg. Co. v. Automotive M. M. Co.*
324 U.S. 806, 815  (1945)                                                  26

*Schapiro v. Su*
2009 WL 1491332 (N.J.Super.A.D. 2009                                       25

*Surf N Sun Apts., Inc. v. Dempsey*
253 B.R. 490, 495(M.D.Fla.1999)                                            19

*Swepco Tube LLC v. Local 427, IUE-CWA, AFL-CIO*
2008 WL 746670, 4 (D.N.J. 2008)                                            23

*U.S. v. Latu* 208 Fed.Appx.
585, 587, 2006 WL 3456511 (9th Cir.  2006)                                2


**Treatises**
*The Restatement of Contracts,* 2d.                                        24

*Williston, Contracts*(3 ed. Jaeger 1978), § 1939 at 46-56.                23

1    **Memorandum of Points and Authorities**

2    **Opposing the Creditor's Claim of Petitioner Yorkville Global Investors LLC**

3

4    **QUESTIONS PRESENTED**

5

6    (A)    Whether sole Chapter 7 Petitioner Yorkville Global Investors, LLC

7    (YAGI), as a secured creditor failed to provide this Court with *subject matter* jurisdiction thereby

8    requiring the dismissal of this case and the restoration of all parties to the *status quo ante?*

9    (B).    Whether, Montenegrex as the successor-in-interest to Gryphon, a non-petitioning

10    creditor in the Chapter 7 case filed by YAGI,  can seeks damage against YAGI under 11 *USC*

11    §303(i)(2), for YAGI's improper, bad-faith filing of the petition?

12    **Alternatively:**

13    (C)    If this Court does determine it has subject matter jurisdiction, is any claim of

14    YAGI unsecured inasmuch as YAGI never perfected its security interest as prescribed by

15    applicable New Jersey law that the parties agreed would control their agreements?

16    (D)    If YAGI has a secured claim against Cobalis is it not *inferior* to Gryphon's

17    secured claim since YAGI *was actually aware* of the Gryphon judgment before YAGI entered

18    into any agreements with Cobalis and before YAGI made its *UCC*-1 filing in Nevada?

19    (E)    Is the purported security interest of YAGI a fraudulent transfer intended to hinder

20    Gryphon's ability to collect upon its judgment entered in Texas and registered in California and

21    therefore should the Trustee be compelled to avoid same under 11 *USC* § 548(1)?

22    (F)    Should any claim of YAGI against Cobalis be disallowed under binding New

23    Jersey law because YAGI prevented Cobalis from performing its contract with YAGI.

1    (G)    Should YAGI, Cobalis and Gryphon,, under New Jersey law, be restored to the

2    *status quo ante* so YAGI does not permanently benefit from its inequitable conduct?

3    (H)    Do YAGI's unclean hands bar this Court from granting any relief to YAGI?

4                                    **Authority**

5

6    Movant, Montenegrex, a secured creditor, is herein challenging the subject matter

7    jurisdiction of this Court. This challenge may be made at any time in this case without regard to

8    any doctrine of limitation.

9    **A litigant generally may raise a court's lack of subject-matter jurisdiction at**

10    **any time in the same civil action**, even initially at the highest appellate

11    instance.*Mansfield, C. & L.M.R. Co. v. Swan,*111 U.S. 379, 382, 4 S.Ct. 510, 28

12    L.Ed. 462 (1884) (**challenge to a federal court's subject-matter jurisdiction**

13    **may be made at any stage of the proceedings, and the court should raise the**

14    **question*sua sponte* **)**; *Capron v. Van Noorden*, 2 Cranch 126, 127, 2 L.Ed. 229

15    (1804) (judgment loser successfully raised lack of diversity jurisdiction for the

16    first time before the Supreme Court); Fed. Rule Civ. Proc. 12(h)(3) ( "Whenever

17    it appears by suggestion of the parties or otherwise that the court lacks jurisdiction

18    of the subject matter, the court shall dismiss the action."). [Emphasis added.]

19    *Kontrick v. Ryan* 540 U.S. 443, 456 (2004)

20    Furthermore, objections to lack of subject matter jurisdiction are not *waivable.*    *U.S. v.*

21    *Latu* 208 Fed.Appx. 585, 587, 2006 WL 3456511 (9th Cir. 2006).

22    Should this Court determine that it has jurisdiction, the Confirmed Plan, § II G. of Debtor

23    Cobalis Corp. (Cobalis), provides that within 4 months after the effective date of the Plan

24    confirmed on June 9, 2010, the claim of any creditor may be challenged.

25

26

**Statement of Relevant Facts**

Movant is Montenegrex, a sole proprietorship organized under the laws of the State of New York. Movant is the lawful successor-in-interest to Gryphon Master Fund LLP (Gryphon) which was a creditor in this case with a filed secured claim of $1.6 million. Said claim was grounded in a Judgment for $1.6 million entered by Order of a Federal District Court in the State of Texas in or about April 2006.

Gryphon registered its Texas judgment in California and obtained 3 liens against the assets of Cobalis in California. These are a lien arising from an ORAP (Order to appear for a debtor examination); a turnover Order; and, a writ of execution. The superiority of these liens to the putative lien of YAGI was by YAGI which *intervened* into the proceeding in which the said 3 liens were authorized by a Federal District Court. All applications of YAGI were denied. It is now *res judicata* that the liens of Gryphon/Montenegrex are superior to that of YAGI.

The writ of execution was returned by the Orange County, CA Sheriff as unsatisfied due *exclusively* to the Chapter 7 filing by YAGI that Montenegrex alleges was done in bad faith by YAGI thereby damaging Gryphon.

YAGI was the sole *petitioning creditor* when this case was commenced as a Chapter 7 involuntary filing on August 1, 2007. *No other creditors* joined YAGI as petitioners. *More than 12* creditors have filed claims. YAGI filed as a *secured* creditor. Cobalis at all times has *disputed* the claim of YAGI as to liability.

The docket indicates that this Court never held the statutorily required hearing to determine whether it lacked subject matter jurisdiction due to the failure of YAGI to comply with 11 *USC* § 303(i) that imposes the condition that before a Chapter 7 can be adjudicated, petitions must be filed by *3* creditors with *unsecured* claims not d*isputed* by the debtor.

3

1   Cobalis filed an adversary proceeding against Gryphon challenging its claim but Cobalis

2   has since filed a *FRBP* Rule 9019 motion to settle the claim, now belonging to Montenegrex, for

3   $1.6 million, as a secured claim. To achieve this settlement, Montenegrex has agreed to waive all

4   post-judgment interest that amounts to *several hundreds of thousands of dollars*. YAGI

5   nonetheless is challenging this settlement; a hearing is scheduled for September 2, 2010.

6                                    **ARGUMENT**

7   **(A)    This Court lacks *subject matter jurisdiction* because Yorkville Global Investors LLC**
8   **was, unlawfully, the *sole* petitioning secured creditor when it made a Chapter 7 filing**
9   **against Cobalis on August 1, 2007.**

10   **1.    While a sole creditor can initially file followed by joinder of 2 more creditors**
11   **with unsecured claims, the *Code* does not allow a Chapter 7 filing by a *single* petitioner to**
12   **when the debtor has more than 12 creditors, nor for any fully secured creditor to file at all.**

13   YAGI on August 1, 2007 petitioned this Court, acting alone, as a *secured* creditor of

14   Cobalis without recourse to personal liability. See Olsen declaration, August 25, 2010; ¶ 2 and

15   YAGI Petition annexed as Ex. "1." YAGI therein merely expresses a doubt as to whether its

16   collateral is sufficient to cover its claim. YAGI fails to set forth *any* amount as an unsecured

17   claim. It refers obliquely and conclusorily to the "statutory limits" of 11 *USC* § 303 but said

18   section has no statutory limits. Thus the Petition is fatally defective for two reasons (i) YAGI is

19   the *sole* petitioning creditor; 3 are required; (ii) YAGI failed to show an *unsecured* claim in

20   excess of the statutory minimum of $10,000.

21   These shortcomings result in a failure of YAGI to provide subject matter jurisdiction to

22   this Court under 11 *USC* § 303(b) that states in relevant part:

23        (b) An **involuntary** case against a person is commenced by the filing with the

24        bankruptcy court of a petition under **chapter 7** or 11 of this title—

25        (1) **by three or more** entities, each of which is either a holder of a claim against

26        such person that is not contingent as to liability or the subject of a bona fide

4

1      dispute as to liability or amount, or an indenture trustee representing such a

2      holder, if such noncontingent, undisputed claims **aggregate at least $10,000**

3      **more than the value of any lien on property of the debtor securing such**

4      **claims held by the holders of such claims;** [Emphasis added.]

5  11 *USC* § 303(b)

6      The value of YAGI's lien on the personal property of Cobalis is the *full extent* of the

7  funds lent by Cobalis to YAGI. Thus as no portion of what Cobalis owed YAGI was uncovered

8  by the lien; there was no unsecured debt and therefore YAGI could not act as the sole petitioning

9  creditor, as it did:

10      In holding that a non-recourse **secured** creditor **may not act as the sole**

11      **petitioning creditor** under § 303(b), the court notes that for the past one hundred

12      years, U.S. bankruptcy statutes have required creditors filing involuntary petitions

13      to hold **unsecured** debt. [Emphasis added.]

14  *In re Allen-Main Associates, Ltd. Partnership* 218 B.R. 278, 280 (Bkrtcy.D.Conn. 1998)

15      YAGI did make the naked conclusory allegation that the value of the collateral was less

16  than its claim. It strains credulity, however, to believe that YAGI would have lent $3,850,000 to

17  Cobalis in March and April and then argue that at the beginning of August the value of its

18  collateral was less than its loans. Furthermore Cobalis had a tax-loss carryforward of

19  approximately $44 million on August 1, 2007. This was a cognizable asset for valuation

20  purposes. *Binks v. DSL.net, Inc.*WL 1713629, 13 (Del.Ch. 2010). A modest valuation, based on

21  then current federal and California tax rates on businesses, would be 20% or over $8 million.

22  For YAGI to argue that its $3,850,000 loan was undersecured is therefore risible. This is

23  especially so as YAGI presented a witness at the valuation hearing who was the president of a

24  YAGI subsidiary in a business similar to Cobalis that could have used the tax loss carryforward.

1    In any event, a single petitioning creditor is insufficient when the number of creditors

2    exceeds 12.   The Court thus *lacked subject matter jurisdiction*.

3    All orders made in the absence of subject matter jurisdiction, *even with the consent of the*

4    *parties*, are *nullities*.

5    Any judgment issued by a federal court without subject matter jurisdiction would

6    also be void. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th

7    Cir.1999) ["A judgment entered by a court lacking subject matter jurisdiction is

8    void and is not entitled to res judicata effect."]; *see also, Insurance Corp. of*

9    *Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct.

10   2099, 2104, 72 L.Ed.2d 492 (1982) [**holding that, as to subject matter**

11   **jurisdiction, "the consent of the parties is irrelevant**, principles of estoppel do

12   not apply, and **a party does not waive the requirement by failing to challenge**

13   **jurisdiction early in the proceedings."].**   [Emphasis added.]

14   *In re Garrett*  315 B.R. 431, 438 (Bkrtcy.E.D.Tex. 2004)

15

16   Accordingly this case must be dismissed for lack of subject matter jurisdiction.

17   **2.    The filing of a Chapter 7 petition requires *3 creditors all* with *undisputed,***

18   ***unsecured* claims; otherwise there is no subject matter jurisdiction.**

19   YAGI was also the *sole* petitioning creditor; 3 are *required*. The petition dated August 1,

20   2007 lists only YAGI. No other petitions were filed subsequently.    See Olsen declaration,

21   August 25, 2010; ¶ 3. Petition annexed as Ex. "1."

22   YAGI *could have* satisfied § 303 by acting in concert with unsecured or partially secured

23   creditors.

24   Though a fully secured creditor acting alone could not bring an involuntary

25   petition, a plain reading of the statute indicates that such a creditor could qualify

26   as a section 303(b) holder simply by acting in concert with other unsecured or

27   partially secured claimants.

6

1    *In re Fox* 1994 WL 484596, 3 (N.D.Ill.,1994)

2    YAGI, however, cannot benefit from the ruling in *Fox*, because it acted *alone*. The

3    docket is *bare* of any subsequent joinder of petitions. No other creditor filed a "Form 5." Hence

4    all of the Orders of the Court were made without subject matter jurisdiction and hence are *void*.

5    This includes the Order made in the Chapter 7 case converting it to Chapter 11.

6    **3.    The entire claim of YAGI, secured and unsecured, was subject to a *bona fide***

7    **dispute, and thus could not be used as the basis of a Chapter 7 filing.**

8    The $3,850,000 lent to Cobalis by YAGI was not repayable until December 2008.  The

9    assertion of YAGI that the attempted enforcement by Gryphon of its judgment was a breach of

10    contract is risible in that YAGI was fully aware of the judgment entered in March 2006 when it

11    loaned the funds to Cobalis in March and April 2007.  See, Olsen declaration, ¶4  and 8-K filing

12    annexed as Ex. "2."

13    Hence there was a *bona fide* dispute whether Cobalis had any liability to respond to

14    YAGI's demand for repayment several years *before* the due date of the debentures.

15    Also, YAGI had served a notice of default with a time to cure expiring on August 7,

16    2010.  .  See, Olsen declaration, ¶ 5 and notice annexed as Ex. "3."  Said notice is grounded in

17    the assertion that Gryphon, by seeking to enforce its judgment, caused Cobalis to breach its

18    agreements with YAGI. *Id.*  But YAGI knew when it contracted with Cobalis in December 2006

19    that the standstill agreement with Gryphon expired in March 2007.  As YAGI did not require

20    Cobalis to pay off the Gryphon judgment as a condition of purchasing the $3,850,000 in

21    debentures from Cobalis, YAGI's implied promise not to condition the contract on any act of

22    Gryphon serves as an *estoppel in pais*.

7

1        The requirements of § 303, it has been held by the Second Circuit, are *subject matter*

2 *jurisdictional.*

3        We believe the more sound view is that the requirement **is subject matter**

4        **jurisdictional, and now so hold.** Whether an alleged debtor is properly before

5        the bankruptcy court **in an involuntary case** is a threshold determination that

6        **should be made at the earliest possible stage of the proceedings.** One of the

7        requirements to bringing such a petition is that the petitioning creditors' claims

8        **are free from bona fide dispute.** Any creditor wishing to invoke the bankruptcy

9        court's jurisdiction in an involuntary case should be required to demonstrate at the

10       earliest practicable point that its petition satisfies this requirement. Otherwise,

11       creditors could, on the basis of relatively untested claims, haul a \*119 solvent

12       debtor with whom they have legitimate disputes into bankruptcy court and force it

13       to defend an involuntary proceeding while the bankruptcy court leaves for a later

14       merits determination whether the debtor is even properly before it. [Emphasis

15       added.]

16 *In re BDC 56 LLC* 330 F.3d 111, 119 (2nd Cir. 2003)

17

18        *This Court failed to make the requisite threshold determination* as to whether YAGI had

19 a *bona fide* claim undisputed as to liability. The docket shows that no hearing was *ever* held.

20        A hearing should thus be held, *nunc pro tunc*, and if a finding is made that this Court

21 lacked subject matter jurisdiction on August 1, 2007, **all of the Orders and rulings of this**

22 **Court must be reversed** and the parties restored to their positions *status quo ante.*

23      **4.    YAGI's use of the Gryphon enforcement action as a reason to make a**

24 **Chapter 7 filing is barred under New Jersey law by the doctrine of *estoppel in pais.***

25        As YAGI was *actually aware* of the standstill agreement between Cobalis and Gryphon,

26 and the expiration of same in March 2007, *before* YAGI contracted with Cobalis in December

27 2006, YAGI implicitly promised not to regard any dispute as between Gryphon and Cobalis as a

1  default.  Under the doctrine of *estoppel in pais,* as applied by the Courts of New Jersey prevents

2  YAGI from asserting its right to any claim of a default as against Cobalis.

3          The estoppel, an invention of equity for the promotion of justice, is not inherent

4          in, but springs to the defense of, an action, and arises to disarm one from

5          maintaining a right which otherwise he would have were it not for his voluntary

6          conduct, which **precludes him from asserting it against another thereby**

7          **misled to his injury.** [Emphasis added.]

8  *Muller v. Thomann* 104 N.J. Eq. 289 (N.J.Ch. 1929)

9          Thus Cobalis had a legal basis to dispute the YAGI claim which prevented YAGI from

10  asserting that its claim was undisputed, absent which, no involuntary filing lies.

11          This case should therefore be dismissed for lack of subject matter jurisdiction.

12          **5.      Montenegrex, immediately after dismissal of this case for lack of subject**
13  **matter jurisdiction, can ask the Sheriff to execute the writ of attachment issued by J. Selna**
14  **of the Central District Court and seize all of the personal property of Cobalis in satisfaction**
15  **of its perfected judgment with statutory interest thereon.**
16
17          Immediately prior to the Chapter 7 filing by YAGI, a writ of attachment  was issued for

18  the Sheriff to levy all of the personal property of Cobalis and turn same over to Gryphon.   Olsen

19  declaration, ¶ 6 and its Ex. "4."   The automatic stay of the Chapter 7 filing by YAGI on August

20  1, 2007 prescribed the satisfaction of the writ.

21          Once this case is dismissed, Montenegrex as the successor of Gryphon, can ask the

22  Sheriff or Orange County to levy the all of the assets of Cobalis found therein. Montenegrex

23  seeks leave of the Court for  an in-courtroom execution of the federal writ on September 2, 2010.

24          Montenegrex can then negotiate terms to lease the seized assets back to Cobalis so that it

25  may continue operations free of any claim against the intellectual property and office furniture

26  and equipment needed to operate its business; with the interest of all creditors and equity holders

9

1    intact, and all payments into the escrow accounts according to the confirmed Plan disgorged to

2    Cobalis.

3    **(B)      Montenegrex as the successor-in-interest to Gryphon, a non-petitioning creditor in**

4    **the Chapter 7 case filed by YAGI, seeks damages against YAGI under 11 *USC* §303(i)(2),**

5    **for YAGI's improper, bad-faith filing of the petition.**

6

7    **1.      This is a case of first impression in which a ruling on the issue at hand was**

8    **invited by the 9th Circuit.**

9

10    No court has ever decided whether a non-petitioning creditor may seek damages for an

11    improper Chapter 7 filing under 11 *USC* §303(i)(2). Montenegrex re-extends the below

12    invitation of the 9th Circuit to this Court to make new law under § 303 of the *Code*.

13    FN7. We leave open, however, the question of whether non-petitioning creditors

14    may seek damages under §303(i)(2).

15    *In re Miles* 430 F.3d 1083, 1094 (9th Cir. 2005)

16

17    The underlying fact pattern herein, however, nicely tees up this issue as the damages

18    inflicted by YAGI upon Gryphon make this the perfect case to decide the question left open by

19    the *Miles* court for subsequent review by another panel in the 8th Circuit.

20    Montenegrex therefore seeks a hearing to prove up its damages caused by the unlawful

21    filing of a Chapter 7 petition against Cobalis by YAGI.

22    **2.      YAGI had an improper purpose not allowable under 11 *USC* § 303 to make a**

23    **Chapter 7 filing against Cobalis.**

24    The *solitary purpose* of YAGI's Chapter 7 filing against Cobalis was to thwart the

25    execution of the writ issued to Gryphon by J. Selna of the District Court. See Olsen declaration,

26    August 26, 2010, ¶ 7.   This was a vexatious act in bad faith void of any valid reason to file an

27    involuntary bankruptcy under § 303.   YAGI knew that Gryphon had agreed to a one year

28    standstill to enforce its $1.6 million judgment so that Cobalis could seek the funding to pay the

1    judgment.  After YAGI lent Cobalis $3,850,000 in March and April 2007, Gryphon obtained a

2    write of execution after waiting so patiently to do so.  YAGI thus acted to delay and hinder

3    Gryphon from obtaining satisfaction of its writ.

4        This Court should therefore fashion an appropriate sanction as against YAGI:

5        Section 105 of the Bankruptcy Code, which allows the Court to *sua sponte*
6        issue any order or judgment necessary to prevent an abuse of process or to carry
7        out the provisions of the Bankruptcy Code. Specifically, Section 105(a) states that
8        "[t]he court may issue any order, process or judgment that is necessary or
9        appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section
10       "105 uses the broad term 'any' which encompasses all forms of orders including
11       those that award monetary relief."*Jove Engineering, Inc. v. I.R.S.,* 92 F.3d 1539,
12       1554 (11th Cir.1996). "A court may assess attorney's fees when a party has acted
13       in **bad faith, vexatiously,** wantonly, or for oppressive reasons." *Chambers v.*
14       *NASCO, Inc.,*501 U.S. 32, 45-46, 111 S.Ct. 2123, 115 L.Ed.2d 27
15       (1991) (recognizing that Courts have the discretion "to fashion an appropriate
16       sanction for conduct which abuses the judicial process" and that "an assessment
17       of attorney's fees is undoubtedly within a court's inherent power") (internal
18       citations and quotations omitted). [Emphasis added.]

19   *In re Pace Trustee of Pace Irrevocable Trust* 376 B.R. 334, 338 (Bkrtcy.M.D.Fla. 2007)
20

21       On-point precedent explains that it was improper of YAGI to use Chapter 7 as a way to

22   thwart Gryphon.

23       It is clear that Sovran Bank filed the petition **with an insufficient number of petitioning**
24       **creditors**, and based the petition upon claims that were the subject *83of a bona fide dispute,
25       contrary to 11 U.S.C. § 303(b)(1) of the Code. *See In re Tarletz,* 27 B.R. 787, 794
26       (Bankr.D.Colo.1983) (noting that **use of the bankruptcy court as a routine collection device**
27       **would quickly paralyze the courts**; the question then becomes whether the bankruptcy court or
28       the state court would better serve the interests of the creditors). [Emphasis added.]

29   *In re Reid 107 B.R. 79, 83* (Bkrtcy.E.D.Va. 1989)
30

11

1    But for the filing of the Chapter 7 petition by YAGI, the writ of execution issued by J.

2    Selna would have been returned satisfied with all of the assets of Cobalis inclusive of its deposit

3    accounts, patents and other intellectual property.  Based on the estimation by this Court in March

4    2010 that Cobalis has a value of $1.5 million, virtually the entire claim of Gryphon could have

5    been satisfied in July 2007.

6    Montenegrex respectfully requests that this Court impose a sanction against YAGI for

7    making an improper and unlawful Chapter 7 filing that had the result of denying Gryphon the

8    satisfaction of its writ of execution issued by the Federal District Court in this district.

9    **(C)    If this Court does find it has subject matter jurisdiction, YAGI does not have a**
10    ***secured* claim against Cobalis because YAGI never perfected its security interest as**
11    **prescribed by the applicable New Jersey law the parties agreed control their agreements.**

12    It is undisputed that the choice-of-law provision in all of the relevant contracts as

13    between YAGI and Cobalis are made subject to the laws of New Jersey.  See Olsen declaration,

14    August 26, 2010, ¶ 8 and Ex. "5.".  Thus New Jersey local law controls where the security

15    interest granted by Cobalis to YAGI is to be perfected under the parties' agreements.  (Of course

16    California has the right to control conduct within its borders.  But the parties chose to substitute

17    New Jersey law for California law.)

18    The controlling statute for the determination of the proper filing office for the perfection

19    of a security interest is *N. J. S. A.* 12A:9-501 that specifies in its sub-section (a) (2) that the

20    Division of Commercial Recording is the proper New Jersey office to file a financing statement

21    to perfect a security interest.

22    (a) Except as otherwise provided in subsection (b), **if the local law of this State**
23    **governs perfection of a security interest** or agricultural lien, **the office in which**
24    **to file a financing statement to perfect the security interest** or agricultural lien
25    is:
26

12

1      (1) the office designated for the filing or recording of a record of a mortgage on
2      the related real property, if:
3
4      (A) the collateral is as-extracted collateral or timber to be cut; or
5
6      (B) the financing statement is filed as a fixture filing and the collateral is goods
7      that are or are to become fixtures; or
8
9      **(2) the Division of Commercial Recording or other office designated by**
10     **Executive Order, in all other cases,** including a case in which the collateral is
11     goods that are or are to become fixtures and the financing statement is not filed as
12     a fixture filing.
13 N. J. S. A. 12A:9-501. Filing office

14     As New Jersey has the exclusive right to enact laws to be enforced within its borders; and

15 as the parties chose to be bound by New Jersey law; and, as it is undisputed that YAGI made no

16 filing in the Division of Commercial Recording in New Jersey, it must be concluded, as a matter

17 of law, YAGI failed to perfect its security interest in accordance with New Jersey law.

18     Thus Montenegrex respectfully seeks a ruling that YAGI *has no security interest* under

19 its agreements with Cobalis. Absent a security interest, YAGI is an *unsecured* creditor.

20 **(D)    If YAGI has a secured claim against Cobalis it is *inferior* to Gryphon's secured**
21 **claim since  YAGI *was actually aware* of the Gryphon judgment before YAGI made its**
22 **UCC-1 filing in Nevada.**
23
24     **1.    Because YAGI was aware of the pre-existing Gryphon judgment, California**
25 **law makes any security interest of YAGI subordinate to the claim of Gryphon.**
26
27     The judgment entered by Gryphon in Texas against Cobalis in March 2006 for $1.6

28 million was known to YAGI well before the *UCC*-1 filing made by YAGI in December 2006.

29 See Olsen declaration, ¶ 9 and Ex. "6."

30     California statutory law limits the subordination of a perfected judgment lien to a security

31 interest only to the extent that the said security interest secures advances made by the secured

32 party *without knowledge of a pre-existing judgment.* YAGI *knew* of Gryphon's $1.6 million

1    judgment well before YAGI made its only *UCC*-1 filing against Cobalis in December 2006.   See

2    Olsen declaration, ¶ 10 and Ex. "2".

3       The effect of pre-knowledge of a judgment by the perfector of a security

4       interest is governed by California's *Code of Civil Procedure (CCP)* § 697.590(b).

5       A judgment lien that has attached to personal property and that is also subordinate

6       under (b) to a security interest in the same personal property **is subordinate to**

7       **the security interest only [if] made without knowledge of the judgment lienor**

8       **pursuant to a commitment entered into without knowledge of the judgment**

9       **lien.**  For purposes of this section, a secured party shall be deemed not to have

10      knowledge of a judgment lien on personal property until (1) the judgment creditor

11      serves a copy of the notice of judgment lien on the secured party personally or by

12      mail; and (2) **the secured party has knowledge of the judgment lien on**

13      **personal property, as "knowledge" is defined in Section 1201 of the**

14      **Commercial Code.** [Emphasis added.]

15   § 697.590(b)

16     **2. Gryphon perfected its lien by service on Cobalis of an Order to Appear**

17   **(ORAP) for a debtor examination.**

18      Gryphon's lien was perfected by its ORAP notice. Olsen declaration,  ¶ 11 and Ex. "12."

19   Also by the turnover and execution Orders of the Federal District Court in July 2007. See, Olsen

20   declaration, ¶ 12 and turnover Order annexed as Ex. "7" and execution Order annexed as Ex.

21   "4."  Olsen declaration, ¶ 13  and Ex. "11." This creates a lien on all of the personal property of

22   the debtor.

23      Under California Code of Civil Procedure § 708.110(d), service of the ORAP

24      "creates a lien on the personal property of the judgment debtor...." **Service of the**

25      **ORAP alone would create an enforceable lien in Franchise's property, even**

26      **without a levy on any property**. *In re Burns,* 291 B.R. 846, 849 (9th Cir. BAP

27      2003); *Imperial Bank v. Pim Electric, Inc.,* 33 Cal.App.4th 540, 552, 39

28      Cal.Rptr.2d 432 (1995). The property does not have to be described in

29      detail.*Burns* at 851; *Imperial Bank* at 553, 39 Cal.Rptr.2d 432. It is specifically

30      allowed to be, in effect, a "secret" lien as it is not recorded or published. "Other

1    creditors are able to discover the lien only if they know about the creditor's
2    judgment and review the court file." Hon. Alan M. Ahart, *Cal. Practice Guide:*
3    *Enforcing Judgments & Debts* § 6:1306 (The Rutter Group 2007). [Emphasis
4    added.]
5    *In re Franchise Pictures LLC* 389 B.R. 131, 141 (Bkrtcy.C.D.Cal. 2008)

6        Under California law, an ORAP lien must be enforced within one year.  That

7    period, however, is extended when, as herein, there is an intervening bankruptcy filing

8    and picks up again where there is no impediment to enforcing the lien.

9        Under 11 U.S.C. § 108(c): "if applicable nonbankruptcy law, an order entered in a
10    nonbankruptcy proceeding, or an agreement fixes a period for commencing or
11    continuing a civil action in a court other than a bankruptcy court on a claim
12    against the debtor, ... and such period has not expired before the date of the filing
13    of the petition, then such period does not expire until the later of-(1) the end of
14    such period, including any suspension of such period occurring on or after the
15    commencement of the case; or (2) 30 days after notice of the termination or
16    expiration of the stay ... with respect to such claim," This section generally
17    applies "to time periods within which a creditor must bring an action to enforce a
18    lien before the lien expires.
19    *In re Franchise Pictures*, p. 140.

20        Thus, Cobalis is well within the one year period.
21        **(3)    The rights of Montenegrex are unaffected by the dismissal of this case**
22    **or a discharge in bankruptcy.**

23        Even a discharge from bankruptcy does not affect a valid pre-petition secured

24    lien.

25        It is also clear, however, that a discharge in bankruptcy does not affect the
26    rights of secured creditors, *Long v. Bullard,* 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed.
27    1004 (1886), and that valid, perfected liens pass through bankruptcy unaltered.
28    *In re Griffin*, 204 B.R. 308, 309 (Bkrtcy.D.R.I. 1997)

1      Thus Gryphon's $1.6 million judgment is not subordinate to the $3,850,000 in advances

2      made by YAGI to Cobalis in December 2006 and March and April 2007 as these were made well

3      *after* YAGI had knowledge of Gryphon's $1.6 million judgment entered in March 2006. Thus

4      under § 697.590(b), the Montenegrex/Gryphon claim of $1.6 million against Cobalis is not

5      subordinate to any putative claim of YAGI as a secured creditor.

6      Therefore Montenegrex has a secured claim for $1.6 million that is *senior* to any possible

7      secured claim of YAGI.

8      **(E)      The granting by Cobalis of a security interest in all of its property in December 2006**
9      **to YAGI was a *fraudulent transfer* under 11 *USC* § 548(1) that the Trustee should be**
10     **compelled to avoid.**

11

12     **1.      Because YAGI had *actual knowledge* of Gryphon's judgment entered in**
13     **Texas in March 2006, YAGI engaged in a fraudulent transfer to deny Gryphon the ability**
14     **to collect upon its judgment.**

15     To settle a then pending lawsuit in which Cobalis was Defendant and Gryphon Plaintiff,

16     in a Federal District Court in Texas, Cobalis entered into an agreement for the entry in April

17     2006 of a $1.6 million judgment.    The parties also agreed to a *one year standstill* for its

18     enforcement. See, Olsen declaration ¶ 14  and Ex. " 9."

19     YAGI were well aware of these circumstances with Gryphon when YAGI demanded that

20     Cobalis execute a blanket security agreement granting YAGI a security interest in *all* of Cobalis'

21     property making no provision for the Gryphon judgment. See, Olsen declaration, ¶ 15 and direct

22     testimony of David Gonzalez, ¶ 39, annexed as Ex. "8."

23     This was a *fraudulent transfer* for the following reasons:

24     1.      YAGI argued, unsuccessfully, to J. Selna of the District Court, against the

25     application of Gryphon for a turnover Order and writ of execution on the ground that it had

1    superior priority over any claim of Gryphon. See, Olsen declaration ¶ 16 and docket as Ex. "10."

2    It is plain that YAGI intended to but failed to deprive Gryphon of any benefit from its judgment.

3        2.    After losing in District Court, YAGI had *actual intent* to interfere with the ability

4    of Gryphon to collect upon its judgment by using its fraudulently transferred  putative security

5    interest to file in Chapter 7 against Cobalis.

6        Actual intent also can be, and usually is, established by circumstantial

7        evidence or " 'inferences drawn from a course of conduct.' "*Leonard v. Coolidge*

8        *In   re   National   Audit   Defense   Network)*,   367   B.R.   207,   219-20

9        (Bankr.D.Nev.2007)(quoting *Mazer v. Jones (In re Jones)*, 184 B.R. 377, 385

10        (Bankr.D.N.M.1995)).

11    *In re Lull* 386 B.R. 261, 270 (Bkrtcy.D.Hawai'i, 2008)

12        Several other circumstances present herein that were identified in *Lull* at p. 270 as

13    indicative of a fraudulent transfer are:

14        (2) the debtor retained possession or control of the property transferred after the
15            transfer;
16
17        None of the Debtor's personal property ever left the control of Cobalis, from the filing of

18    the Chapter 7 petition until the present date.

19        (4) before the transfer or obligation was made or obligation was
20            incurred, the debtor was sued or threatened with suit;
21
22        Not only was Cobalis sued by Gryphon before Cobalis granted YAGI a security interest

23    but the parties agreed upon a judgment for $1.6 million that was entered in Texas.

24        (5) the transfer was of substantially all of the debtor's assets;

25    The security agreement was all-inclusive.
26
27        (8) the value of the consideration received by the debtor was [not]
28            reasonably equivalent to the value of the asset transferred or the
29            amount of the obligation incurred;

17

1        When the security interest was granted by Cobalis to YAGI, the price of the stock was

2    approximately $0.75 with 50 million shares outstanding. See Olsen declaration, ¶ 17. Thus with

3    a market capitalization of over $35 million, it can reasonably be said that the value of the

4    consideration to be received by Cobalis, $3,850,000, was not even close to being equal to the

5    value of the assets transferred under the security agreement and the 7 million shares given by the

6    Radovich family as security.. Furthermore, as explained, *supra*, the tax loss carryforward alone

7    had a value of over $8 million.

8            (9) the debtor was insolvent or became insolvent shortly after the
9                transfer was made or the obligation was incurred;
10
11        The Security Interest was granted in December 2006 and the $3.650,000 advanced to

12    Cobalis by YAGI in April and May 2007.  YAGI claimed that Cobalis was insolvent by making a

13    Chapter 7 filing against Cobalis.  It is thus unreasonable to allege that Cobalis dissipated the

14    loaned amount so quickly as to become insolvent.

15            (10) the transfer occurred shortly before or shortly after a substantial
16                debt was incurred;
17        The Security Interest was created in December 2006, the debt was incurred in April and

18    May 2007 when Cobalis sold YAGI $3,850,000 in convertible debentures.

19        Montenegrex respectfully requests a finding and determination that YAGI engaged in

20    fraudulent conduct to prevent Gryphon from obtaining satisfaction of its writ of execution and

21    therefore that it holds no security interest to which the claim of Montenegrex is subordinate.

22        **2.    The Trustee therefore must be compelled to avoid any security interest of**
23    **YAGI that occurred *within 2 years* of the August 1, 2007 filing date of the petition that is**
24    **detrimental to Montenegrex.**

18

1    YAGI, knowing that Cobalis had a one year standstill that prevented Gryphon from

2    registering its Texas Judgment in California, entered into the security agreement with YAGI

3    "with actual intent to hinder, delay, or defraud" Gryphon.    The trustee should therefore be

4    compelled to seek relief under 11 U. S. C. § 548 (a)(1)(A):

5        (a)(1) The trustee may avoid any transfer *** that was made or incurred on or

6        within 2 years before the date of the filing of the petition, if the **debtor**

7        **voluntarily** or **involuntarily**--

8        (A) made such transfer or **incurred such obligation** with actual intent to hinder,

9        delay, or defraud any entity to which the debtor was or became, on or after the

10        date that such transfer was made or such obligation was incurred, indebted; or

11        [Emphasis added.]

12    11 U.S.C. § 548

13    Relief may be obtained by first requesting the Trustee to act.  This had been done, but the

14    Trustee refuses to act. See Olsen declaration, ¶ 17 and Email annexed as Ex. "11."  Therefore

15    Montenegrex respectfully requests that this Court compel the trustee to avoid the security interest

16    agreement as part of the Debtor's pending adversary proceeding against YAGI.

17        If a creditor desires the trustee to avoid a particular transfer of the debtor's

18        property, the creditor should voluntarily provide the trustee with all relevant facts

19        and evidence in the creditor's possession and persuade the trustee to take action.

20        After weighing the relevant factors, the trustee may or may not conclude that the

21        recommended action is in the best interests of *all* creditors. If the trustee exercises

22        his discretion to not pursue the action, the creditor may move the court to compel

23        the trustee to act or, alternatively, seek removal of the trustee for abuse of

24        discretion. *See* 11 U.S.C. § 324.

25    *Surf N Sun Apts., Inc. v. Dempsey* 253 B.R. 490, 495(M.D.Fla.1999)

26    Therefore this Court should order the Trustee to seek to avoid the security interest

27    agreement of YAGI.

19

1  **(F)    YAGI's claim should be disallowed under binding New Jersey law because YAGI**
2  **prevented Cobalis from performing its contract with YAGI.**

3      **1.    Because Cobalis was in its developmental stages with no prospect of**
4  **immediate sales revenues, its only way of redeeming the debentures in 2008 that it sold to**
5  **YAGI in 2007 was to sell additional shares to the public.**

6      YAGI was aware at all relevant times that Cobalis had no source of revenues other than

7  by selling shares of stock to the public. It was therefore critical to Cobalis that any financing

8  arrangement with YAGI not impair the ability of Cobalis to continue to sell shares to the public.

9  Indeed, Cobalis was counting on its ability to sell further shares as the means by which it would

10  repay, in 2008, the $3.650 million that it borrowed from YAGI in March and April 2007. Under

11  the terms of sale, Cobalis could redeem these debentures *at any time* but must redeem them

12  beginning in December 2008. See Olsen declaration, ¶ 18, and Ex. "13."

13      **2.    So as not to impede its ability to sell shares to redeem the debentures, Cobalis**
14  **obtained a representation from YAGI that it would *never short sell* shares of Cobalis**
15  **during the term of the debentures.**
16
17      YAGI provided Cobalis with a blanket written representation that YAGI would never sell

18  Cobalis shares during the term of the convertible debentures

19      The explicit representation that YAGI would never short sell is set forth in the Securities

20  Purchase Agreement at paragraph 4(l):

21      (l) Neither the Buyer(s) nor any of its affiliates have an open short position in the
22      Common Stock of the Company, **and the Buyer(s) agrees that it shall not, and that it**
23      **will cause its affiliates not to, engage in any short sales** of or hedging transactions **with**
24      **respect to the Common Stock as long as any Convertible Debentures shall remain**
25      **outstanding.** [Emphasis added.]

26      This promise not to sell short was confirmed in the direct testimony of the general

27  counsel of YAGI, David Gonzalez, Esq.  Olsen declaration, ¶ 19, and statement, ¶ 37, Ex. "8."

20

1    **3.    YAGI ignored its promise not to sell short, thereby violating a material term**
2    **of its agreement with Cobalis.**

3    It is undisputed that YAGI did short millions of shares of Cobalis stock and then had the

4    transfer agent convert debentures into stock certificates to cover the short sales:

| Date | Certificate # | $ Amount | # of Shares | Price Per Share |
|------|---------------|----------|-------------|-----------------|
| 3/23/07 | 9448 | $25,000 | 33,025 | $0.76 |
| 4/10/07 | 9466 | 25,000 | 36,539 | 0.68 |
| 4/12/07 | 9467 | 500,000 | 730,780 | 0.68 |
| 4/24/07 | 9499 | 999,999 | 1,333,333 | 0.75 |
| 7/13/07 | 9544 | 170,000 | 1,524,664 | 0.11 |
| 7/19/07 | | 195,000 | 1,748,879 | 0.11 |
| 9/27/07 | | 79,809 | 1,505,823 | 0.05 |
| 9/28/07 | | 32,191 | 607,385 | 0.05 |
| 10/16/07 | 9587 | 67,000 | 1,607,143 | 0.04 |
| 3/12/08 | 9635 | 52,500 | 2,375,566 | 0.02 |
| 4/3/08 | 9637 | 60,000 | 2,343,750 | 0.03 |
| 4/18/08 | 9641 | 22,049 | 1,055,000 | 0.02 |
| **TOTAL** | | **$2,154,748** | **13,901,887** | **0.15** |

19    **4.    This Court is thus constrained to find that YAGI breached a material term**
20    **of the agreement when YAGI sold millions of shares of Cobalis *short* violating its explicit**
21    **promise not to do so.**

22    The mutual expectation of the parties was that *if Cobalis prospered*, its share price

23    would increase and that YAGI should have the opportunity to participate other than by receiving

24    interest on its bonds. Thus the bonds were convertible into shares at the sole election of YAGI.

21

1   Cobalis was understandably concerned that any such converted shares be held by YAGI for *long*

2   *term* investment.  The last thing that Cobalis wanted would be for YAGI to purchase shares and

3   then sell them over the short term.  This could severely inhibit the ability of Cobalis to sell

4   further shares.  For this reason Cobalis obtained an explicit ban on short selling set forth above.

5   Said ban is unconditional and unequivocal.  No selling short, which under New Jersey case law

6   is defined as:

7        FN5. A basic definition of "selling short" is: "When someone shorts a

8        stock [sometimes called 'selling short'], [he or she] borrow[s] shares of a

9        company from an investor and sell[s] those borrowed shares at the current market

10       price.

11  *Overstock.com, Inc. v. Gradient Analytics, Inc.* 151 Cal.App.4th 688, 694 (1 Dist. 2007)

12       In various filings by YAGI that this Court is aware of, YAGI has tried to exculpate itself

13  by saying that it made no improper short sales *under government regulations*.  YAGI either

14  misses the point or has attempted to mislead this Court.  The parties' agreement, *supra*, bars all

15  short sales, *categorically*.

16       Anticipating that YAGI may dispute the meaning of the words, short sale, the following

17  holding of a federal District Court in New Jersey is instructive:

18       First, in determining the intent of the parties to a contract, "[t]he plain language of

19       the agreement guides our construction '[a] court is not authorized to construe a

20       contract in such a way as to modify the plain meaning of its words, under the

21       guise of interpretation.' ... 'The court should ... avoid ambiguities, if the plain

22       language of the contract permits .... [and] should not torture the language ... to

23       create ambiguities.' "*Wall St. Aubrey Golf, LLC v. Aubrey*, 189 Fed. Appx. 82, 85

24       (3d Cir.2006) (internal citations omitted).

25  *Swepco Tube LLC v. Local 427, IUE-CWA, AFL-CIO* 2008 WL 746670, 4 (D.N.J. 2008)

1     It is thus beyond peradventure that YAGI sold Cobalis shares short during the term of the

2     convertible debentures.

3     **5.    By selling millions of shares short, YAGI caused the value of the publicly**
4     **traded shares to decline precipitously thereby *preventing* Cobalis from performing.**

5     As YAGI thus blocked Cobalis from performing the agreement by selling shares to repay

6     the debentures, YAGI must be excused from performance. Under New Jersey law, when a

7     contract partner prevents his counter-party from performing, the prevented, non-performing

8     contractor, is released from any further obligation. Thus Cobalis, which was prevented by the

9     acts of YAGI from selling shares in 2007 and thereafter, should be excused from repayment to

10    YAGI of the $3,850,000 in debentures.

11    In a different setting our Supreme Court has noted that where a party to a contract

12    "is unavoidably through no fault of his own prevented from consummating" a

13    contract, the obligation of such party to fulfill the contract is excused; it must be

14    considered beyond the contemplation of the other party to the contract that he will

15    be paid in such circumstances. *Rothman Realty Corp. v. Bereck, 73 N.J 590, 601,*

16    *376 A.2d 902 (1977).*

17    *Directions, Inc. v. New Prince Concrete Const. Co., Inc.* 200 N.J.Super. 639, 643
18    (N.J.Super.A.D. 1985.)

19    The *Directions* court found a treatise instructive for the proposition that "[w]here,

20    however, the proceedings which interfere with the performance of the promise are based on no

21    fault of the promisor, there seems to be no reason why the interference should not be an excuse."

22    *Williston, Contracts* (3 ed. Jaeger 1978), § 1939 at 46-56.

23    An exception was recognized when the "circumstances surrounding the formation of the

24    contract are such as to indicate that the possibility of such interference was *recognized* and the

25    risk of it assumed by the obligor." *Id,* at 48-49.    In our case, the contract explicitly states that

26    YAGI will not sell short and is making a long-term investment.  There was no recognition in any

23

1    of the agreements between the parties of any *special risk* that YAGI may elect to sell shares short

2    and drive down the price of Cobalis.  Thus the interference of YAGI in the share price of Cobalis

3    does represent a *valid legal excuse,* under New Jersey law, for the non-performance of Cobalis.

4           The *Directions* court, at p. 644,  cites to another treatise,  *The Restatement of Contracts,*

5    2d. for a similar rule:

6           Where, after a contract is made, a party's performance is made impracticable

7           without his fault by the occurrence of an event **the non-occurrence of which was**

8           **a basic assumption on which the contract was made**, his duty to render that

9           performance is discharged, unless the language or the circumstances indicate the

10          contrary. [Emphasis added.]

11     § 261. Discharge by Supervening Impracticability

12           Cobalis justifiably made the basic assumption that YAGI would live up to its promises in

13    the agreements to be a long-term investor and not to sell short Cobalis shares during the term of

14    the agreements. YAGI violated both of these promises by selling over _____ million shares short

15    during the first months of the agreements.  See Olsen declaration, ¶ 19.¶

16           Thus when YAGI by selling millions of shares *short*, with the expected consequence of

17    driving down the price of the shares, it became impossible for Cobalis to perform by selling

18    shares to raise funds to pay off the debentures that it sold to YAGI.

19           Cobalis respectfully requests an Order excusing that it be excused from performing under

20    its agreements with YAGI.

21    **(G)**    **The parties, under New Jersey law, must be restored to their *status quo ante* to be**
22    **sure that YAGI does not permanently keep a benefit derived by its inequitable conduct.**
23
24           By misrepresenting to Cobalis that YAGI was a long term investor who would not short

25    sell Cobalis shares, and then doing the opposite, YAGI earned considerable profits.  Binding

1   precedent requires that this Court "prevent the party who is responsible for the

2   misrepresentations from **gaining a benefit**. [Emphasis added.]   *Schapiro v. Su* 2009 WL

3   1491332 (N.J.Super.A.D. 2009), citing to *Bonnco Petrol, Inc. v. Epstein*, 115 N.J. 599, 612,

4   *Enright v. Lubow,* 202 *N.J.Super* 58, 72 (App.Div.1985)).

5       To determine the amount of the gained benefit to be disgorged to Cobalis, YAGI should

6   be required to produce an accounting of its profits, and additionally the entire claim of YAGI

7   must be disallowed.

8   **(H)   YAGI's unclean hands bars any recovery.**

9       The conduct of YAGI is an archetype of inequitableness and bad faith: promising

10  Cobalis, in December 2006, that it was a *long-term investor* and would *not sell short* Cobalis

11  shares—and then within a few months selling short millions of shares and driving down the price

12  to near zero by year end.  Such conduct, it has been held by the 9th Circuit in a ruling cited to by

13  a District Court in this district, closes the door of a court of equity to the wrongdoer.

14          "The unclean hands doctrine closes the doors of a court of equity to one tainted

15          with inequitableness or bad faith relative to the matter in which he seeks relief,

16          however improper may have been the behavior of the defendant." *Adler v.*

17          *Federal Republic of Nigeria* 219 F.3d 869, 877 (9thCir.2000) (internal quotation

18          and citation omitted).

19  *Mag Instrument, Inc. v. JS Products, Inc.* 595 F.Supp.2d 1102, 1110 (C.D.Cal. 2008).

20

21      The Supreme Court of the U. S. has repeatedly held relief must be denied to those who

22  act "with fraud and deceit as to the controversy in issue. *Keystone Driller Co. v. General*

23  *Excavator Co.*, 290 U.S. 240, 245; *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387.  The

24  Court also instructs that the misconduct necessary to invoke denial of relief need not be a crime

25  or be required to justify legal proceedings of any character. Any willful act concerning the

1    controversy in issue that transgresses equitable standards of conduct is sufficient. *Precision Inst.*

2    *Mfg. Co. v. Automotive M. M. Co.* 324 U.S. 806, 815 (1945).

3        This Court should therefore disallow the claim of YAGI in its entirety.

4
5                                    **Conclusion**

6        WHEREFORE, Montenegrex respectfully requests: **(i)** the dismissal of this case for lack

7    of subject matter jurisdiction' **(ii)** leave of the Court for the Sheriff should a ruling be made from

8    the bench dismissing the case to immediately make in-court service of the writ of execution

9    issued by J. Selna of the District Court against an officer of Cobalis; **(iii)** that all Orders of this

10    Court in this case be nullified; **(iv)** a hearing so that Montenegrex may prove up its damages

11    caused by the unlawful conduct of YAGI in this case; **(v)** that sanctions be imposed on YAGI for

12    engaging in fraudulent conduct to impede Gryphon from obtaining satisfaction of its writ of

13    execution; **alternatively: (vi)** a ruling that YAGI has no security interest as against Cobalis;

14    **(vii)** a ruling that YAGI has no claim under New Jersey law against Cobalis due to YAGI

15    preventing performance by Cobalis; **(viii)** that the secured claim of Montenegrex is senior to any

16    secured claim of YAGI; **(ix)** a finding and determination that YAGI engaged in fraudulent

17    conduct with the intent of denying Gryphon the satisfaction of its writ of execution; **(x)** that this

18    Court order the Trustee to seek to avoid the security interest agreement of YAGI; **(xi)**

19    Montenegrex also seeks a hearing so that it may prove up its damages as against YAGI under §

20    303(i) for unlawfully filing a Chapter 7 petition against Cobalis thereby blocking the Sheriff

21    from satisfying the writ of execution issued by J. Selna; **(xii)** an Order directly YAGI to provide

22    Montenegrex with an accounting of its revenues from the short selling of Cobalis stock; **(xiii)** an

23    Order disallowing the entire claim of YAGI or denying that the claim is secured; **(xiv)** a

24    declaratory judgment that Montenegrex has the most senior secured claim of any creditor against

                                        26

1    Cobalis in the amount of $1.6 million.  Montenegrex seeks such other and further relief as to this

2    Court seems just.

3    New York, New York

4    August 26, 2010

5                                              Montenegrex
6
7                                              /s
8
9
10                                             By: Rey Olsen
11                                             *In propria persona*
12                                             P. O. Box 7022
13                                             New York, NY 10150-7022
14                                             WSGNY@aol.com

27