# ORIGINAL



FILED

APR - 4 2011

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk

Rey Olsen
Appearing *in Propria Persona*
*Montenegrex*
*P. O. Box 7022*
*New York, NY 10150-7022*
*(917) 701-1101*
*WSGNY@AOL.COM*

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| **In re:** | **Case No. 8:07-bk-12347-TA** |
| **COBALIS CORPORATION,**<br>Debtor. | **Chapter 11** |

**NOTICE OF MOTION TO RECONSIDER
ORDER DENYING  MONTENEGREX
MOTION TO RECONSIDER DENIAL OF
COBALIS MOTION OPPOSING
INDEMNIFICATION OF YA GLOBAL
INVESTORS,  L. P.**

| | |
|---|---|
| **Date:** | ~~June 4, 2011~~  *6 - d - 11* |
| **Time:** | ~~11:00 AM~~  *d:00 pm .* |
| **Ctrm:** | **5B** |
| | **411 West Fourth Street** |
| | **Santa Ana, CA** |
| **Judge:** | **HON. THEODOR C. ALBERT** |

*LC*
*Amended Ntc to be
of Hearing submitted*
*of hearing submitted*

*Original not Signed*

# TABLE OF CONTENTS

Page

Table of Authorities — iii

Preliminary Statement — 1

Judicial Notice Requested — 2

Testimony Required — 2

ARGUMENT — 3

(a)    This case is highly *irregular* with many *manifest errors of law* that
require revisiting. — 3

(b)    The Indemnification clause in the Security Purchase Agreement is
paramount over any other lesser indemnification clauses set forth in the
Debentures or Security Agreement. — 5

(c)    Under binding New Jersey law, YAGI, as indemnitee, cannot recover
its attorney's fees against Cobalis, as indemnitor, as there is no language in
the indemnification clause explicitly providing for this relief. — 6

(d)    There was never any finding of fact or conclusion of law that Cobalis
*defaulted* under any of its agreements with YAGI, therefore nothing occurred
to trigger the indemnification clause.   Ruling otherwise is a manifest errors
of fact and law. — 6

    1.    Cobalis did not owe YAGI a cent on the Petition Date of
August 1, 2007. — 6

    2.    The simple filing of a Chapter 7 Petition, without cause,
does not invoke indemnification by the debtor. — 7

    3.    *After-the-fact*, YAGI claimed, that Cobalis had *defaulted*
because Gryphon Master Fund, L. P. was seeking to enforce
its liens. — 7

    4.    Permitted Liens always have priority in right of payment over
subsequent liens. — 8

(e)   Indemnification by Cobalis is not triggered by the tortious act of
YAGI against Cobalis.  This was a *manifest error of fact and law*.          8

(f)   Unless the Order allowing YAGI its attorney's fees under the
Indemnity Agreement is vacated, a *manifest i*njustice will occur.           9

    1.   YAGI engaged in wrongdoing by filing a Chapter 7 Petition
        against Cobalis without cause.                                 9

    2.   YAGI caused the injury to itself.                          9

    3.   Even if YAGI is only partially at fault, under New Jersey
        law it may not claim indemnification.                          9

(g)   YAGI never tendered an indemnification request to Cobalis at the start
of the Chapter 7 proceeding as required under established principles
of indemnification.                                                         10

(h)   Indemnification clause (a) in the Security Purchase Agreement is
ambiguous as to whether it covers attorneys' fees for YAGI, as indemnitee
to sue Cobalis as indemnitor.  The clause therefore must be construed
against YAGI.                                                               11

(i)   Indemnification clause (b) in the SPA actually *indemnifies Cobalis*
against the acts of YAGI.                                                   12

(j)   Indemnification for Cobalis actions against YAGI for short selling
and other malefactions are not covered under New Jersey law unless
there is "explicit contractual language to the contrary."                  13

CONCLUSION                                                                  14

# TABLE OF AUTHORITIES

|  | Page |
|---|---|
| **Statutes and Regulations** | |
| 11 U. S. C. § 303(b)(1) | 3, 4, 5 |
| 11 U. S. C. § 502(j) | 1, |
| 11 U. S. C. § § 706(a) | 4 |
| 28 U. S. C. § 1746 | 4 |
| 28 U. S. C. 1927 | 2 |
| *FRBP* 1017(f)(2) | 4 |
| *FRBP* 2002(a)(4) | 4 |
| *FRBP* 3001(d) | 7 |
| *FRBP* Rule 3008 | 1 |
| *FRBP* 9013 | 4 |
| *FRBP* 9017 | 2 |
| *FRBP* Rule 9023 | 2 |
| *FRCP* 59(a)(2) | 2 |
| *FRCP* 43(c) | 2 |

**Case Law**

| | |
|---|---|
| *Bailey v. Security Trust Co.* | |
| 179 Cal. 540, 550 (Cal.1919) | 6 |
| *Central Motor Parts Corp. v. E.I. duPont deNemours & Co., Inc.* | |
| 251 N.J.Super. 5, 11 (N.J.Super.A.D. 1991) | 9 |
| *In re Aguilar,* | |
| *861 F.2d 873, 874 (5th Cir.1988)* | 2 |
| *In re Associated of Los Angeles* | |
| 2010 WL 4739503, 6 (Bkrtcy.C.D.Cal. 2010) | 8 |

*In re Consolidated Pioneer Mortg.*
178 B.R. 222, 227 (9th Cir.BAP (Cal.) 1995 ............................................. 11

*In re Terrace Lawn Memorial Gardens*
256 F.2d 398, 403 (9th Cir. 1958) ............................................................. 5

*In re Wedgestone Financial*
142 B.R. 7, 8 (Bkrtcy.D.Mass. 1992) ....................................................... 1

*Kieffer v. Best Buy*
2010 WL 1526371, 3 (N.J.Super.A.D. 2010) ..................................... 3, 4, 12

*Levit v. Kutcher*
1996 WL 614631, 6 (Pa.Com.Pl. 1996) ................................................... 6

*Mantilla v. NC Mall Associates*
167 N.J. 262, 264 (N.J. 2001) ............................................................ 10, 14

*Price v. Gurney*
324 U.S. 100, 106-107 (1945) .............................................................. 4, 5

*Serpa v. New Jersey Transit*
401 N.J.Super. 371, 382 (N.J.Super.A.D. 2008) ................................... 14

*SGS U.S. Testing Co., Inc. v. Takata Corp.*
2010 WL 3035742, 4 (D.N.J. 2010)

*Shan Industries, LLC v. Tyco International (US), Inc.*
2005 WL 3263866, 8 (D.N.J. 2005) ......................................................... 6

*Tippins Inc. v. USX Corp.*
37 F.3d 87, 91(3rd Cir. 1994) ................................................................. 9

*United New York Sandy Hook Pilots Ass'n v.*
*Rodermond Industries, Inc.*
394 F.2d 65, 73(3rd Cir. (N.J.) 1968) ..................................................... 11

*U. S. Wire & Cable Corp. v. Ascher Corp.*
34 N.J. 121, 127 (N.J. 1961) ................................................................. 11

1
## Preliminary Statement

2    Montenegrex understands that to succeed in this motion, under *FRBP* Rule 3008, it must

3    demonstrate *manifest errors of law or fact.* It will do both.

4    To succeed on a motion to reconsider, the Court requires that the moving party
5    show newly discovered evidence **or a manifest error of fact or law.** *In re*
6    *Mortgage Investors Corp.* 136 B.R. 592, 598 (Bankr.D.Mass.1992).
7    *In re Wedgestone Financial* 142 B.R. 7, 8 (Bkrtcy.D.Mass. 1992) [Emphasis added.]

8    Because the errors are so manifest, this brief, mercifully, will be short and to the point.

9    The indemnification relief sought by allegedly secured creditor YA Global Investors, L.

10   P. (YAGI) is to increase its proof-of-claim to add its attorney fees.[1]  YAGI has stated in open

11   court that these fees exceed the amount of its actual claim set forth on its Petition of at least $3

12   million.  In other words YAGI will be seeking more on its indemnification demand for post-

13   petition attorney's fees than on its pre-petition claim.

14   The standards to be applied for the reconsideration of a claim are § 502(j) of the *Code* as

15   implemented by Rule 3008. Section 502(j) of the *Code* provides in pertinent part, that, "[a] claim

16   that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be

17   allowed or disallowed according to the equities of the case."

18   The tentative decision adopted in the Order entered on March 21, 2007 does not

19   reference:

20       *       Rule 3008.

21       *       § 502(j).

22       *       The Reply Brief of Montenegrex filed on February 21, 2011.

23   *FRBP* Rule 3008 states that "[a] party in interest may move for reconsideration of an order

24   allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter

25   an appropriate order."

---

[1]    YAGI alleges that it has a security interest in all of the assets of Cobalis, which consist
almost exclusively of patents and trademarks.  YAGI alleges that it perfected its security interest
by making a UCC-1 filing in Nevada, YAGI's state of incorporation.  Nevada law, however,
does not permit a UCC-1 filing in patents and trademarks as federal law pre-empts Nevada law.
A security interest can only be perfected with the U. S. Patent and Trademark office. YAGI
therefore has no security interest in virtually any of Cobalis assets.

1      The Fifth Circuit Court of Appeals has held that where a *FRBP* Rule 3008 motion is filed

2  within the ten day period to appeal [since changed to 14 days] , the applicable standards for

3  reconsideration and definition of "cause" under § 502(j) must be found in Rule 59(a).[FN5] *In re*

4  *Aguilar,* 861 F.2d 873, 874 (5th Cir.1988). FN5. Fed.R.Civ.P. 59(a) is made applicable to

5  bankruptcy proceedings through *FRBP* Rule 9023.

6      *FRCP* 59(a)(2) provides that the court may open the judgment, *take additional testimony,*

7  amend or *make new findings of fact and conclusions of law,* and direct the entry of a new

8  judgment for any of the reasons for which rehearings have been granted in suits in equity.

9      Montenegrex shall set forth herein why it needs *additional testimony* to prevent manifest

10  errors of fact and law and support new findings of fact and conclusions of law that YAGI is not

11  entitled, under New Jersey law governing indemnification agreements, to reimbursement of its

12  attorney's fees because, solely because as YAGI claims, it instituted a proceeding against

13  Cobalis, *i. e.,* its Chapter 7 involuntary Petition.

14      The Court instructed in its Decision that a movant seeking reconsideration is limited by a

15  rule of due diligence that requires that arguments should be made the first time around.  It is a

16  sensible rule to prevent overburdening the courts with repetitive motions.  It is not, however, a

17  necessarily an *equitable* rule.  YAGI claims it has spent over $3.5 million on attorney's fees in

18  this case.  Montenegrex is represented by Rey Olsen, who is not an attorney and who is

19  appearing *in propria persona.* The argument is respectfully made that while it is *important* to get

20  it right the first time, what is *paramount* is to get it right eventually and do justice to the parties.

21  In over a year of observing the acts of this Court, I have always observed a laudable preference

22  for the latter.

23              **Judicial Notice Requested**

24      Montenegrex respectfully requests that this Court take judicial notice of all of the files in

25  this adversary proceeding and in the principal case, Index No. 8:07-bk-12347-TA.

26              **Testimony Required**

27      Montenegrex respectfully seeks, under *FRBP* 9017/*FRCP* 43(c), on the return date of this

28  motion, to adduce testimony voluntarily by officers and directors of Cobalis who were in office

29  from December 20, 2006 until the present. These fact witnesses will testify without a subpoena.

30  They are Chaslav Radovich (C. Radovich), Radul Radovich,  and Kevin Prendiville, M. D.

1    Each witness will testify that Cobalis was not in breach of any agreement with YAGI on

2    August 1, 2006. Each will also testify that the Board of Directors of Cobalis never voted to

3    petition this Court to enter into a voluntary Chapter 11 bankruptcy. C. Radovich will bring with

4    him the original corporate minute book for the relevant periods for submission into evidence.

5    Montenegrex respectfully requests that these witnesses be heard either on the return date

6    of this motion or at a continuance as it pleases this Court. If at all possible, Montenegrex, who is

7    represented by Olsen, a New Yorker, respectfully requests that the continuance be only a day or

8    two later so that Olsen, who has health problems that are exacerbated by long-distance travel,

9    need not make another round trip to Santa Ana from New York.

10                                    **ARGUMENT**

11   **(a)    This case is highly *irregular* with many *manifest errors of law* that require revisiting.**

12   As the docket shows:

13   No hearing was ever held during the time from August 1, 2007 until November 19, 2007

14   when an Order was entered converting the Chapter 7 involuntary case to a voluntary Chapter 11.

15   YAGI was *negligent;* its Petition's claim did not qualify under § 303(b)(1).

16   Under § 303(b)(1) an involuntary Chapter 7 Petition can only be filed if the underlying claim is

17   not contingent or disputed. YAGI's claim was the subject of a notice-to-cure letter dated July

18   25, 2007 that gave Cobalis 15 days to cure. Notice to cure letter annexed to Rey Olsen's

19   declaration, March 30, 2011, as Exhibit "2." Note: all references hereinafter will be to the same

20   declaration. Thus on the Petition date of August 1, 2007, YAGI's claim was still *contingent.*

21   Also YAGI's claim was disputed. The Petition states that at least $3 million is owed. Petition

22   annexed as Exhibit "4." In a statement sent by YAGI a few days before to the transfer agent,

23   YAGI stated that $2,835,000 was owed. Statement annexed as Exhibit "14." This is a $165,000

24   discrepancy. YAGI's claim was therefore *disputed.* It was at the least negligent for YAGI to

25   present a contingent and disputed claim in violation of § 303(b)(1) in support of a Chapter 7

26   filing.

27   An indemnitee will generally not be indemnified for defense costs and fees

28   resulting **from its own negligence**. *Mantilla v. NC Mall Assocs.*, 167 *N.J.* 262,

29   264, 770 A.2d 1144 (2001).*** . Known as the "after-the-fact approach," the

30   availability of indemnification is determined after liability of the parties is

31   determined. *Id.* at 271, 770 A.2d 1144.

3

1  *Kieffer v. Best Buy* 2010 WL 1526371, 3  (N.J.Super.A.D. 2010)

2

3      It would be a manifest injustice and manifest error of law not to hold that YAGI was not

4  negligent in filing a claim that was both *contingent and disputed*.

5          The strict-construction approach is taken for two apparent reasons. *See Am.*
6      *Bldg. Maint. Co. v. L'Enfant Plaza Props., Inc.,* 655 A.2d 858, 861–62
7      (D.C.1995) (citation omitted). **One is that a party ordinarily is responsible for**
8      **its own negligence,** and shifting liability to an indemnitor must be accomplished
9      only through express and unequivocal language. *See ibid.* (citation omitted).
10     Another is that, under the American Rule, absent statutory or judicial authority or
11     express contractual language to the contrary, each party is responsible for its own
12     attorney's fees. *See ibid.* (citation omitted).

13  *Kieffer v. Best Buy, page 5*

14     No motion on notice was ever made by the Debtor to convert the case. Completely

15  ignored were the following required procedures: (i) the hearing mandated by *FRBP* 1017(f)(2) to

16  hold a hearing prior to a conversion under § 706(a); (ii) Gryphon's  due process right to receive a

17  motion on notice, as required by *FRBP* 9013 and *FRBP* 2002(a)(4) of the hearing on a

18  conversion motion.

19     No voluntary Petition was ever filed by the Debtor.  This Court never held any hearing,

20  as required by U. S.Supreme Court and 9th Circuit precedent, to find out if YAGI's Chapter 7

21  Petition complied with the requirements of § 303(b)(1).   Nor did this Court ever make the

22  mandatory inquiry of Cobalis corporation to determine if its Board had authorized a voluntary

23  bankruptcy filing.

24     The U. S. Supreme Court instructs that this Court had an affirmative obligation to

25  determine that the Vice President of Cobalis, Cosic, who signed the unsworn statement (in

26  violation of *FRBP* 1008 and 28 U. S. C. § 1746) seeking conversion from Chapter 7 to Chapter

27  11, did so with the proper authority of the Board of Cobalis.

28         The District Court in passing on petitions filed by corporations under Chapter X
29     [2]must of course determine **whether they are filed by those who have authority**
30     **so to act.** In absence of federal incorporation, that authority finds its source in
31     local law. If the District Court finds that those who purport to act on behalf of the
32     corporation have not been granted authority by local law to institute the
33     proceedings, **it has no alternative but to dismiss the petition.** [Emphasis added.]

34  *Price v. Gurney* 324 U.S. 100, 106-107 (1945)

---

[2]      Chapter X was a precursor of Chapter XI.

The 9th Circuit, relying on *Price v Gurney,* also directs that this Court make the necessary determination that the conversion to Chapter 11 is properly authorized.

> FN4. 'The District Court in passing on petitions filed by corporations under Chapter X must * * * determine whether they are filed by those who have authority so to act. In absence of federal incorporation, that authority finds its source in local law.' Price v. Gurney, 324 U.S. 100, 106, 65 S.Ct. 513, 516, 89 L.Ed. 776.

*In re Terrace Lawn Memorial Gardens* 256 F.2d 398, 403 (9th Cir. 1958)

Thus Montenegrex and its transferor, Gryphon Master Fund L. P. (Gryphon) had no opportunity to be heard to point out to the Court that YAGI failed to provide this Court with jurisdiction under § 303(b)(1), *supra.*

Before the merits of the remainder of Montenegrex arguments are considered, it is respectfully requested that this Court determine whether it has jurisdiction to even consider same in view of all of the procedural shortcomings identified, *supra.*

**(b)    The Indemnification clause in the Security Purchase Agreement is paramount over any other lesser indemnification clauses set forth in the Debentures or Security Agreement.**

All of the Transaction Documents were prepared by YAGI. The Security Purchase Agreement (SPA) was reviewed by the Cobalis Board of Directors as the *primary* agreement between the parties. The other documents all implement the SPA. The Debentures are ancillary documents that were subsequently issued and not reviewed by the Board. The Security Agreement is also an ancillary document. There are vestiges of indemnification clauses in each of the ancillary documents. These, however, must yield to the principal Indemnification clause in the principal document under well-established principles of construction as enunciated by California's highest court.

> **To hold that a mere subsidiary agreement between the parties** to the proposed transfer providing that, after its consummation, a certain percentage of the purchase price to be paid by Matthew S. Platz, or his assigns into the hands of the escrow holder, in performance of the condition of the option and escrow, was to be repaid to him as a commission, should have the effect of nullifying the letter of instructions, **and destroying the obvious intent and explicit terms of the main document** and agreements between the parties, **would be to violate a most essential rule governing the construction of written instruments by giving to a minor portion of the agreements between the parties an implied meaning**

1  **and effect contradicting the express terms of the main agreements between**
2  **them,**
3  *Bailey v. Security Trust Co.* 179 Cal. 540, 550 (Cal.1919)
4
5  A Pennsylvania court faced with a similar fact pattern ruled that when subsidiary
6  agreements are so interrelated with the main agreement, they are merged into the main
7  agreement.
8  If both the principal and allegedly subsidiary agreements relate to the same
9  subject matter and are so interrelated that both would normally be included in a
10  single contract, then any subsidiary matters are merged into the main agreement.
11  *Levit v. Kutcher* 1996 WL 614631, 6 (Pa.Com.Pl. 1996)
12
13  The treatment of indemnification in the SPA must therefore control.
14
15  **(c)    Under binding New Jersey law, YAGI, as indemnitee, cannot recover its attorney's**
16  **fees against Cobalis, as indemnitor, as there is no language in the indemnification clause**
17  **explicitly providing for this relief.**
18
19  The indemnification clause of the SPA, reproduced in full in §§ (h) and (i), *infra*,
20  contains no statement providing that the indemnitee is to recover its attorney's fees for the
21  enforcement of the clause.
22  In this circumstance it is binding law in New Jersey that the indemnitee is not entitled to
23  relief.
24  This Court finds ***    that an indemnification agreement providing for
25  attorneys' fees will not be interpreted to require the reimbursement of attorneys'
26  fees **incurred by the indemnitee in an action against the indemnitor to**
27  **enforce the indemnity agreement unless the language of the agreement is**
28  **explicitly clear that it is intended to provide for attorneys' fees in such a case.**
29  This position is consistent with the well-developed law of the Second Circuit and
30  the State of New York, which jurisdictions have had more frequent occasions to
31  consider this particular issue. *See U.S. Fid. & Guar. Co.*, 369 F.3d at 75; *Hooper*,
32  74 N.Y.2d at 492 (citing cases). [Emphasis added.]
33  *Shan Industries, LLC v. Tyco International* (US), Inc. 2005 WL 3263866, 8 (D.N.J. 2005)
34  Accordingly, as the parties have agreed that New Jersey law is to govern, the Order
35  allowing YAGI its attorney's fees in this case must be vacated.

1   (d)     **There was never any finding of fact or conclusion of law that Cobalis *defaulted***
2   **under any of its agreements with YAGI, therefore nothing occurred to trigger the**
3   **indemnification clause.   Ruling otherwise is a manifest errors of fact and law.**

4         **1.     Cobalis did not owe YAGI a cent on the Petition Date of August 1, 2007.**

5         On August 1, 2007, Cobalis had completely paid off 1 of 3 debentures; all that was
6   unpaid was $335,000 of the second debenture with an original amount of $675,000 and one
7   debenture for $2,500,000.  Statement of YAGI annexed to Olsen declaration as Exhibit "14."

8         The redemption date of the second debenture was February 20, 2009.   February
9   Debenture annexed as Exhibit "7."   The redemption date of the first debenture was December
10  20, 2008.  December Debenture annexed as Exhibit "6."

11        As can be readily determined from the above, Cobalis did not owe YAGI a cent on
12  August 1, 2007.

13        YAGI filed a Chapter 7 Petition against Cobalis *without cause.*

14        This is hardly reason to trigger an indemnification agreement whereby YAGI has
15  justification to seek reimbursement of its attorney's fees for filing a groundless Petition.

16        **2.     The simple filing of a Chapter 7 Petition, without cause, does not invoke**
17        **indemnification by the debtor.**

18        A bad faith filing cannot make the hapless debtor responsible for the attorney's
19  fees of the Petitioner whose attorneys failed their basic responsibility under 28 U. S. C.  1927 to
20  be sure that there is a valid cause of action and not multiply proceedings unnecessarily.

21
22        **3.     *After-the-fact*. YAGI claimed, that Cobalis had *defaulted* because Gryphon**
23        **Master Fund, L. P. was seeking to enforce its liens.**

24        YAGI's Petition does not explain *any* alleged default by Cobalis.  Petition annexed hereto
25  as Exhibit "4."    While YAGI claims to have a secured claim, *no attachments* showing a
26  perfected security interest or lien are attached.  This violates *FRBP* 3001(d).

27        **(d) Evidence of perfection of security interest.**
28        If a security interest in property of the debtor is claimed, the proof of claim shall
29        be accompanied by evidence that the security interest has been perfected.
30  *FRBP* 3001(d)

31        The Petition was therefore fatally deficient, *ab initio*. But as no hearing was held, this
32  apparently did not come to the attention of this Court.

7

1    In subsequent oral arguments, YAGI asserted that Cobalis had committed breach only

2    because Gryphon had attempted to enforce a judgment Gryphon had obtained in April 2006 well

3    before the parties agreements dated December 20, 2006.

4    The Security Agreement between the parties, in its § 4.2(8), explicitly states that any lien

5    *arising from* a pre-existing judgment is a "Permitted Lien."   Gryphon and Cobalis agreed to a

6    stipulated judgment for $1.6 million that was entered by a district court in the State of Texas on

7    or about April 6, 2006.  The parties to the judgment agreed on an enforcement moratorium of

8    one year.  This also was known to YAGI which was paid $22,500 by Cobalis to do a due

9    diligence study prior to the time that YAGI entered into any agreement with Cobalis.

10   When the said moratorium expired in April 2007, Gryphon had a district court in the

11   central district of California enter its Texas judgment an issue a writ of execution, Order to

12   Appear (ORAP) and a turnover Order.  On May 14, 2007 Gryphon created a judicial lien by

13   registering its judgment with the California Secretary of State and an ORAP lien by serving the

14   ORAP Order on Cobalis.

15   YAGI tried to block the execution of the turnover Order by obtaining a stay from the

16   district court.  The stay was lifted on July 30, 2007.  On August 1, 2007 YAGI filed its Chapter 7

17   Petition against Cobalis.

18   Since Gryphon's lien all arose from a pre-existing judgment, they were permitted liens.

19   The enforcement of a permitted lien by Gryphon cannot be an Event of Default.   Absent a

20   default, YAGI had no cause to file its Petition on August 1, 2007.

21        **4.     Permitted Liens always have priority in right of payment over subsequent**
22   **liens.**

23   It is indisputable that the Gryphon liens, arising out of Gryphon's April 2006 judgment is

24   are permitted liens under the SA, § 4.2(8).  As such, any lien of YAGI is subsidiary to the liens

25   of Gryphon under the standards for construction of the term "Permitted Liens."

26        The Priority Claims shall have priority in right of payment over any and all other
27        unsecured obligations, liabilities, indebtedness, and claims of any kind and nature,
28        now in existence or hereafter incurred by Debtor,  *** *provided, however,* the
29        Priority Claims **shall be subject and junior to the Permitted Liens** and Claims.

30   *In re Associated of Los Angeles*  2010 WL 4739503, 6 (Bkrtcy.C.D.Cal.,2010)

1    The efforts of Gryphon to enforce its liens, which are characterized as Permitted Liens by
2    the parties in the SA, therefore cannot be interpreted as a default; rather it was an expectation to
3    a high degree of certitude.

4    **(e)    Indemnification by Cobalis is not triggered by the tortious act of YAGI against**
5    **Cobalis. This was a *manifest error of fact and law.***
6

7    As YAGI had no basis in contract to file a Chapter 7 Petition against Cobalis its tortious
8    filing did not trigger indemnification under New Jersey law. YAGI cannot ask that Cobalis
9    indemnify YAGI for *its own tort* in commencing, without cause, a Chapter 7 involuntary Petition
10   against Cobalis. To make such a demand, "the language in the indemnity provision must be
11   clear and unequivocal, and the burden of proof falls on the party seeking such relief; the burden
12   is even greater where such party drafted the agreement." *Tippins Inc. v. USX Corp.* 37 F.3d 87,
13   91(3rd Cir. 1994)

14   **(f)    Unless the Order allowing YAGI its attorney's fees under the Indemnity Agreement**
15   **is vacated, a *manifest* injustice will occur.**
16

17   **1.    YAGI engaged in wrongdoing by filing a Chapter 7 Petition against Cobalis**
18   **without cause.**
19   Unless a would-be indemnitee "is free from active wrongdoing regarding injury to" itself,
20   and has tendered the defense at the start of litigation, it cannot enforce indemnification.

21   The better decisions, whose principles **we hold shall apply in New Jersey**, take
22   **an after-the-fact approach** and permit an indemnitee's recovery of counsel fees
23   **"so long as the indemnitee is <u>free from active wrongdoing regarding the</u>**
24   **<u>injury to the plaintiff</u> and has tendered the defense to the indemnitor at the**
25   **<u>start of the litigation</u>."** *Piedmont Equip. Co. v. Eberhard Mfg. Co.,* 99 Nev. 523,
26   665 P.2d 256, 258-259 (1983); *accord Pender v. Skillcraft Indus., Inc.,* 358 So.2d
27   45, 46 (Fla.Dist.Ct.App.1978); *Hanover Ltd. v. Cessna Aircraft Co.,* 758 P.2d
28   443, 448 (Utah Ct.App.1988). [Emphasis added.]
29   *Central Motor Parts Corp. v. E.I. duPont deNemours & Co., Inc.* 251 N.J.Super. 5, 11
30   (N.J.Super.A.D. 1991)

31   Cobalis *was not in default* of its agreements with YAGI simply because Gryphon was
32   enforcing liens that arose from its judgment that preceded the agreements between YAGI and
33   Cobalis. Liens arising from Gryphon's April 2006 judgments were "Permitted Liens"
34   under § 4.2(8) of the SA.

35   **2.    YAGI caused the injury to itself.**

1    The sole cause of YAGI's request for indemnification are the attorney's fees
2    incurred in this Bankruptcy Court against Cobalis.  If YAGI had not filed its *groundless* Chapter
3    7 Petition, it would have incurred no attorney's fees.   Hence it would have no reason to seek
4    indemnification.  As YAGI was hardly free from active wrongdoing by filing an involuntary
5    petition without cause, it cannot, under controlling case law, be considered "free from wrong."
6    *Central Motor, supra.*

7        **3.    Even if YAGI is only partially at fault, under New Jersey law it may not**
8            **claim indemnification.**
9
10    New Jersey's highest court instructs that when an indemnitee is even *partially at fa*ult, it
11    may not recover the cost of its *defense* from an indemnitor.

12        We hold that absent explicit contractual language to the contrary, an
13        indemnitee who has been found to be **at least partially at fault** may not recover
14        the costs of its defense from an indemnitor.  [Emphasis added.]
15    *Mantilla v. NC Mall Associates* 167 N.J. 262, 264 (N.J. 2001)
16

17    **(g)    YAGI never tendered an indemnification request to Cobalis at the start of the**
18    **Chapter 7 proceeding as required under established principles of indemnification.**
19
20        The Petition makes absolutely no reference to:
21        (a)    Any indemnification agreement.

22        (b)    Any claim for attorney's fees.

23        (c)    Reliance on any documents but the Securities Purchase Agreement
24              and the Debentures that are referred to as Notes.  Petition annexed as
25              Exhibit " ."

26    It is unquestioned that under New Jersey law, as enunciated by its highest court, unless a
27    demand for indemnification is made at the beginning of litigation, and unless the litigation is
28    turned over to the control of the indemnitor, any indemnification is *waived.*

29        However, the better rule **637 deduced from an examination of the out of
30        State cases, and which is herewith adopted, is that such notice, whether written or
31        oral, must contain full and fair information concerning the pending action and an
32        **unequivocal, certain and explicit demand to undertake the defense thereof,**
33        **with an offer to surrender control of the action to the indemnitor** at least to
34        that portion of the claim for which the indemnitee seeks ultimately to hold the
35        indemnitor liable. **The notice should be given so shortly after the institution of**
36        **suit as to permit a complete control of pretrial proceeding by the indemnitor.**

1    See 1 Freeman on Judgments, supra, s 449; 30A Am.Jur., supra, s 420; 50 C.J.S.,
2    supra, s 812; Hoppaugh v. McGrath, supra; Restatement, Judgments, supra, s 107,
3    comment (e), at p. 515. [Emphasis added.]
4    *U. S. Wire & Cable Corp. v. Ascher Corp.* 34 N.J. 121, 127 (N.J. 1961) accord *United New York*
5    *Sandy Hook Pilots Ass'n v. Rodermond Industries, Inc.* 394 F.2d 65, 73(3rd Cir. (N.J.) 1968)

6    Under these binding precedents if YAGI had informed Cobalis of its intent to seek
7    indemnification at the start of the case, Cobalis would have had the choice of arranging for
8    bankruptcy counsel for YAGI at Cobalis cost. As YAGI did not do this, YAGI forfeited any
9    right that it may have had to seek indemnification.

10                                     ###

11    The officers and directors of Cobalis, who have been in office since August 2007, will
12    testify on the return date of this motion or at any continuance that may be ordered. Montenegrex
13    has the right to seek this testimony under FRBP 3008. *In re Consolidated Pioneer Mortg.* 178
14    B.R. 222, 227 (9th Cir.BAP (Cal.) 1995). They will testify that:

15    *    YAGI was well aware of the Gryphon judgment, and the right
16         of Gryphon to enforce same beginning in April 2007, when YAGI
17         contracted with Cobalis.

18    *    YAGI had no objection to the judgment or its enforcement and in
19         fact the parties negotiated that any lien arising from the Gryphon
20         judgment would be a Permitted Lien to take precedence over
21         any lien of YAGI.

22    It would be a *manifest injustice* and a *manifest error of* law to allow YAGI, nearly 4 years
23    later, to ask for the indemnification that it did not seek at the inception of the same index number
24    under which the motion is filed.

25    **(h)   Indemnification clause (a) in the Security Purchase Agreement is ambiguous as to**
26    **whether it covers attorneys' fees for YAGI, as indemnitee to sue Cobalis as indemnitor.**
27    **The clause therefore must be construed against YAGI.**

28    The Indemnification clause, 8. (a)(c), of the SPA speaks only about "any cause of action,
29    suit or claim *brought or made against* such Indemnitee." [Emphasis added.]    It does not speak
30    of any cause of action, suit or claim brought *by* the Indemnitee *against* the Indemnitor.

To the extent that YAGI may wish to turn this clause on end, it would necessarily need to argue ambiguity. Under New Jersey law, this would be fatal to YAGI, as the would-be indemnitee.

> When the meaning of the clause is ambiguous, however, the clause should be strictly construed against the indemnitee. *See Longi v. Raymond-Commerce Corp.*, 34 *N.J.Super.* 593, 603, 113 A.2d 69 (App.Div.1955); *Huck v. Gabriel Realty*, 136 *N.J.Super.* 468, 475, 346 A.2d 628 (Law Div.1975).

*Kieffer v. Best Buy*, page 2

The entire Indemnification clause 8. (a) is reproduced below.

**8. INDEMNIFICATION.**

(a) In consideration of the Buyer's execution and delivery of this Agreement and acquiring the Convertible Debentures and the Conversion Shares hereunder, and in addition to all of the Company's other obligations under this Agreement, the Company shall defend, protect, indemnity and hold harmless the Buyer(s) and each other holder of the Convertible Debentures and the Conversion Shares, and all of their officers, directors, employees and agents( including, without limitation, those retained in connection with the transactions contemplated by this Agreement (collectively the "Buyer Indemnitees" from and against any and all actions, causes of action, suits, claims, losses, costs, penalties, fees, liabilities and damages, and expenses in connection therewith (irrespective of whether any such Buyer Indemnitee is a party to the action for which indemnification is sought), and including reasonable attorneys' fees and disbursements (the "Indemnified Liabilities"), incurred by the Buyer indemnitees or any of them as a result of, or arising out of, or relation to (a) any misrepresentation or breach of any representation or warranty made by the Company in this Agreement, the Convertible Debentures or the Transaction Documents or any other certificate, instrument or document contemplated hereby or thereby, or (c**) any cause of action, suit or claim brought or made against such Indemnitee** and arising out of or resulting from the execution, delivery, performance or enforcement of this Agreement or any other instrument, documents or agreement executed pursuant hereto by any of the parties hereto, any transaction financed or to be financed in whole or in part, directly or indirectly, with the proceeds of the issuance of the Convertible Debentures or the status of the Buyer or holder of the Convertible Debentures the Conversion Shares, as a Buyer of Convertible Debentures in the Company. To the extent that the foregoing undertaking by the Company may be unenforceable for any reason, the Company shall make the maximum contribution to the payment and

satisfaction of each of the Indemnified Liabilities, which is permissible under applicable law. [Emphasis added.]

**(i)** Indemnification clause (b) in the SPA actually *indemnifies Cobalis* against <u>the acts of</u> <u>YAGI.</u>

Cobalis may seek indemnification of YAGI for the following reasons:

(i)    The Buyer, YAGI, agreed to defend, protect, indemnify and hold harmless the Company, Cobalis.

(ii)    YAGI misrepresented that any liens arising out of pre-existing judgments would be "Permitted Liens." SA, § 4.2(8). Gryphon had a pre-existing judgment and therefore had a permitted lien.

(iii)    YAGI filed the instant Petition against Cobalis **"based on material \*\*\*** **breach and arising out of or resulting from the \*\*\* <u>enforcement of this Agreement.</u>"** Namely, YAGI has claimed that its sole reason for filing the Chapter 7 Petition was Gryphon's enforcement of its permitted lien

The entire Indemnification clause 8. (b) is reproduced below.

(b)    In consideration of the Company's execution and delivery of this Agreement, and **in addition to all of the Buyer's other obligations** under this Agreement, the **<u>Buyer shall defend, protect, indemnify and hold harmless the</u>** **<u>Company</u>** and all of its officers, directors, employees and agents (including, without limitation, those retained in connection with the transactions contemplated by this Agreement) (collectively, the "Company Indemnitees") from and against any and all Indemnified Liabilities incurred by the Indemnitees or any of them **<u>as a result of, or arising out of, or relating to (a) any</u>** **<u>misrepresentation or breach of any representation or warranty made by the</u>** **<u>Buyer(s) in this Agreement, instrument or document contemplated hereby or</u>** **<u>thereby executed by the Buyer,</u>** (b) any breach of any covenant, agreement or obligation of the Buyer(s) contained in this Agreement, the Transaction Documents or any other certificate, instrument or document contemplated hereby or thereby executed by the Buyer, or (c) any cause of action, suit or claim **<u>brought or made against such Company Indemnitee</u> based on material** **misrepresentations or due to a material breach and arising out of or resulting** **from the execution,** delivery, performance **<u>or enforcement of this Agreement,</u>** the Transaction Documents or any other instrument, document or agreement executed pursuant hereto by any of the parties hereto. To the extent that the foregoing undertaking by each Buyer may be unenforceable for any reason, each

1  Buyer shall make the maximum contribution to the payment and satisfaction of
2  each of the Indemnified Liabilities, which is permissible under applicable law.
3  [Emphasis added.]
4
5  ###
6  YAGI, ironically has no cause of action against Cobalis for indemnification but Cobalis
7  does have a cause of action for indemnification as against YAGI.
8
9  **(j)    Indemnification for Cobalis actions against YAGI for short selling and other**
10 **malefactions are not covered under New Jersey law unless there is "explicit contractual**
11 **language to the contrary."**
12
13 There can be no question that under New Jersey law YAGI is not entitled to its attorney's
14 fees even if YAGI is successful in defending Cobalis adversary proceeding.
15
16 Ultimately, the *Mantilla* Court held that **"absent explicit contractual**
17 **language to the contrary,** an indemnitee who has defended against allegations of
18 its own independent fault may not recover the costs of its defense from an
19 indemnitor." 167 N.J. at 275, 770 A.2d 1144.  [Emphasis added.]
20 *SGS U.S. Testing Co., Inc. v. Takata Corp.* 2010 WL 3035742, 4 (D.N.J. 2010) accord *Mantilla,*
21 *supra,* and *Serpa v. New Jersey Transit* 401 N.J.Super. 371, 382 (N.J.Super.A.D. 2008)
22
23 Thus at a minimum, this Court must rule that YAGI is not entitled to its attorney's fees in
24 defending against any of the complaints in which Cobalis is Plaintiff and YAGI Defendant.
25 **CONCLUSION**
26 The Order allowing YAGI to seek indemnification for its reasonable attorney's fees in
27 this case must be vacated, under New Jersey law, for the following reasons all of which involve
28 manifest errors of fact and law:
29 1.    There is a threshold issue of whether this Court, because of all of the irregularities
30 in this case, has jurisdiction.
31 2.    The issues of indemnification must be determine with reference to the
32 indemnification clause in ¶¶ 8 (a) and (b) in the Securities Purchase Agreement.  This has not yet
33 been done.
34 3.    There is no explicit language in ¶¶ 8 (a) and (b), as required by New Jersey law,
35 providing for the indemnitee to collect its legal fees in a proceeding against the indemnitor.

1    4.    This Court has never made a finding or determination that Cobalis defaulted in

2  any of the Transaction Documents with YAGI. Absent a default, indemnification cannot be

3  triggered.

4    5.    The tortious act of YAGI in filing a groundless Chapter 7 Petition against Cobalis,

5  based on a single contingent and disputed debt, did not trigger indemnification.

6    6.    YAGI never tendered at the commencement of its Chapter 7 Petition any request

7  to Cobalis for indemnification as is required by standard indemnification procedures.

8    7.    Any provision in ¶¶ 8 (a) and (b) in the Securities Purchase Agreement as to the

9  liability of Cobalis as indemnitor, to YAGI as indemnitee, in this case, is ambiguous and

10  therefore unenforceable.

11    8.    To the extent that YAGI is entitled to indemnification from Cobalis under ¶ 8 (a)

12  in the Securities Purchase Agreement, Cobalis is entitled to indemnification from YAGI under ¶

13  8 (b).

14    9.    Indemnification to YAGI for Cobalis causes of action against YAGI for short

15  selling and other depredations is not covered due to the lack of specific language that is made

16  mandatory by New Jersey law for this coverage to exist.

17      For all of these reasons the Order allowing YAGI to seek its reasonable attorney's fees in

18  this case under the Indemnification clause of the Securities Purchase Agreement  must be

19  vacated. Montenegrex seeks such other and further relief as this Court deems just.

20

21  New York, New York

22  April 4, 2011

23

24                                    Montenegrex

25                                    Creditor and shareholder
26                                    P. O. Box 7022
27                                    New York, NY 10150-7022
28                                    (917) 701-1101
29                                    WSGNY@aol.com
30

31                                    /s/ ...................................

32                                    Rey Olsen

15

1    4.    This Court has never made a finding or determination that Cobalis defaulted in

2    any of the Transaction Documents with YAGI. Absent a default, indemnification cannot be

3    triggered.

4    5.    The tortious act of YAGI in filing a groundless Chapter 7 Petition against Cobalis,

5    based on a single contingent and disputed debt, did not trigger indemnification.

6    6.    YAGI never tendered at the commencement of its Chapter 7 Petition any request

7    to Cobalis for indemnification as is required by standard indemnification procedures.

8    7.    Any provision in ¶¶ 8 (a) and (b) in the Securities Purchase Agreement as to the

9    liability of Cobalis as indemnitor, to YAGI as indemnitee, in this case, is ambiguous and

10   therefore unenforceable.

11   8.    To the extent that YAGI is entitled to indemnification from Cobalis under ¶ 8 (a)

12   in the Securities Purchase Agreement, Cobalis is entitled to indemnification from YAGI under ¶

13   8 (b).

14   9.    Indemnification to YAGI for Cobalis causes of action against YAGI for short

15   selling and other depredations is not covered due to the lack of specific language that is made

16   mandatory by New Jersey law for this coverage to exist.

17   For all of these reasons the Order allowing YAGI to seek its reasonable attorney's fees in

18   this case under the Indemnification clause of the Securities Purchase Agreement  must be

19   vacated. Montenegrex seeks such other and further relief as this Court deems just.

20

21   New York, New York
22   April 4, 2011
23

24                                    Montenegrex

25                                    Creditor and shareholder
26                                    P. O. Box 7022
27                                    New York, NY 10150-7022
28                                    (917) 701-1101
29                                    WSGNY@aol.com
30

31                          /s/ ... Rey Olsen

32                                    Rey Olsen

1    Montenegrex
2    Secured creditor
3    By: Rey Olsen, appearing *in propria persona*
4    P. O. Box 7022
5    New York, NY 10150-7022
6    917 701-1101
7    WSGNY@AOL.COM

8                     UNITED STATES BANKRUPTCY COURT
9                      CENTRAL DISTRICT OF CALIFORNIA
10                          SANTA ANA DIVISION
11    IN RE
                                          Case 8:07: 12347-TA
12    COBALIS CORP., a Nevada corporation,

13              Debtor.
14
15                                    Date: June 4, 2011
16                                    Time: 11:00 am
17                                    Place:  Courtroom 5B
18                                    411 West Fourth Street
19                                    Santa Ana, CA.
20
                          **DECLARATION OF SERVICE**
21          Ingrid Olsen, being over the age of 18 and not a party in this case, makes the following
22    declaration based on my personal knowledge.  I reside in New York, NY.  I am not a party to
23    this case.
24          On the 4th day of April 2011 I emailed the below listed documents to the Email addresses
25    set forth below:
26
27    KHoang@foley.com KMurphy@goeforlaw.com Kowens@foley.com  rgoe@goeforlaw.com
28    luckey.mcdowell@bakerbotts.com  Richard.harper@bakerbotts.com
29    Michael.Hauser@usdoj.com
30
31    Motion to Reconsider Order Denying Montenegrex Motion Opposing Denial of
32    Cobalis Motion to deny indemnification to YA Global Investors.
33    April 4, 2011
34
35                          /s/___ *Ingrid Olsen*
36                                    Ingrid Olsen