Keith C. Owens (CA State Bar No. 184841)
**VENABLE LLP**
2049 Century Park East, Suite 2100
Los Angeles, California  90067
Telephone:   310.229.9900
Facsimile:    310.229.9901
Email:   kcowens@venable.com

C. Luckey McDowell (TX State Bar No. 24034565)
**BAKER BOTTS L.L.P.**
2001 Ross Avenue
Dallas, Texas  75201-2980
Telephone:   214.953.6500
Facsimile:    214.661.6503
Email:   luckey.mcdowell@bakerbotts.com

ATTORNEYS FOR CREDITOR YA GLOBAL INVESTMENTS, L.P.,

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| In Re | Case No. 8:07-bk-12347-TA |
|---|---|
| COBALIS CORP, | and Case No. 8:11-bk-19915-TA[1] |
| | Chapter 11 |
| DEBTOR. | YA GLOBAL INVESTMENTS, L.P.'S MOTION TO CONVERT AND/OR DISMISS COBALIS' BANKRUPTCY CASES |
| | **Hearing** |
| | DATE:   August 22, 2011
TIME:    10:00 a.m. PDT
CTRM:  5-B
           411 West Fourth Street
           Santa Ana, CA
JUDGE:   HON. THEODOR C. ALBERT |

YA Global Investments, L.P. ("YA Global") hereby files this *Motion to Convert and/or Dismiss Cobalis' Bankruptcy Cases* requesting that the Court convert the first bankruptcy case filed by Cobalis Corporation ("Cobalis" or the "Debtor") to chapter 7 for cause, and dismiss the Debtor's second bankruptcy case as a bad faith filing.

---

[1] This Motion addresses issues common to both cases and suggests an overall outcome for the cases.  Accordingly, YA Global has filed identical versions of this Motion in both of the cases.

DAL02:589231.1

**PRELIMINARY STATEMENT**

1. At the July 27, 2011 hearing—in response to the Court's Orders to Show Cause why the cases should not be converted—Cobalis promised the Court that Chaim Stern would post a bond to cover 100% of YA Global's claim plus future attorney fees, presumably in lieu of the escrow account. Despite requests, Cobalis has not provided YA Global with a draft of the bond, letter of credit, or similar instrument; Cobalis has not even discussed any of the details of such an offer with YA Global.

2. In any event, the Court rejected the idea of the bond because it would only further protract litigation that has caused YA Global's claim to increase as it incurs substantial legal fees in defense of Cobalis' meritless attacks. The Court repeatedly stressed to Cobalis and its counsel that they had only one option: pay YA Global, in full, by August 22, or have their cases converted.

3. Despite the Court's unambiguous directive, Cobalis' management still clings to the hope that it can continue to survive by changing the repayment terms of its Plan. Cobalis' strategy fails for a myriad of reasons. First, Cobalis cannot modify its Plan pursuant to 11 U.S.C. § 1127(b) because its Plan has been substantially consummated.[2] Second, the Debtor cites to no authority that permits a debtor to use section 1127(b) to modify a confirmed plan where the debtor has since filed a second bankruptcy case. Third, modification of a plan—even if possible—would necessarily require a new disclosure statement and confirmation process that would be hotly contested. *See* 11 U.S.C. §§ 1127 (b),(c),(d) and (f). The Court has indicated that it has no intention of repeating the last four years of bankruptcy litigation, making a second round of confirmation infeasible. Finally, the Debtor cannot satisfy its high burden to defeat YA Global's Lift Stay Motion, thereby making a re-reorganization impossible.

---

[2] At the July 27, 2011 hearing, the Debtor disclosed for the first time that it has reduced unsecured claims under its Plan from $5.6 million to $3.5 million, a reduction of 37.5%. While the source of payment—whether by cash, stock or other consideration—remains shrouded in mystery, the effect is the same: the Debtor has substantially consummated its Plan over the last year by making $1.5 million in payments to the YA Global escrow account and by satisfying $2.1 million in unsecured claims through various means.

4. Cobalis cannot dispute that it has defaulted on its Plan obligations by failing to make required payments to the YA Global escrow account.[3] In addition, Cobalis has defaulted by selectively making payments to those unsecured creditors who agreed to accept stock, while refusing to honor its payment obligations to creditors who insisted on cash payments consistent with the Plan.

5. For four years, this Court has given Cobalis every opportunity for a fresh start, only to be repaid with empty promises and failure. Cobalis' delay tactics have continued, and the empty promises have only grown in magnitude as the case becomes more desperate. The debtor used a residential address on its newest petition in a failed attempt to have its case heard by Judge Carroll. Now the Debtor has promised that its investor is prepared to post a $10 million bond,[4] even though the investor did not even bother to attend the July 27 conversion hearing.

6. The debtor and its management has no credibility, and they have abused the federal bankruptcy system for too long. Secured creditors are creditors, too—and it is past time for the Court to put these cases out of their misery.

## RELIEF REQUESTED

7. Pursuant to 11 U.S.C. § 112(b), YA Global requests that the Court convert case no. 8:07-bk-12347-TA (the "First Case") to chapter 7. YA Global further requests that case no. 8:11-bk-19915-TA (the "Second Case") be dismissed, or in the alternative be converted to chapter 7.

---

[3] *See* Dkt. 815 (notice of default).

[4] The May 2011 proof of claim filed by YA Global asserted an aggregate claim in the approximate principal amount of $6 million, plus future legal fees (after taking into account the $1 million fee reduction). The escrow account currently has a balance of approximately $1.5 million, of which less than $600,000 is attributable to a reduction in the principal. The balance is attributable to accrued interest payments based on the five-year amortization scheduled contained in the Debtor's Plan. Accordingly, even after taking into account the current escrow account, Cobalis still owes YA Global $5.5 million in principal, $2.7 million in interest at the Plan rate (over the next four years), fees incurred over the last three months, plus future attorney fees incurred in connection with the securities litigation, ongoing Bankruptcy Cases, and the nine pending appeals. YA Global conservatively estimates that a bond would need to be at least $10 million to account for these future payments.

## PROCEDURAL HISTORY

8. On July 1, 2011, Cobalis defaulted on its obligations under the Plan and Confirmation when it failed to make an escrow payment as required by its Plan in the First Case.[5] Unable to cure its default by July 11, Cobalis filed its Second Case in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, on Friday, July 8, 2011.

9. Cobalis filed the Second Case in Los Angeles in a bad-faith attempt to avoid this Court's jurisdiction. Cobalis represented on its petition that its street address was 14462 Allegan, Whittier, California—a residential address not previously used in this Court.[6] This caused the Second Case to be assigned to the Central District's Los Angeles Division rather than to this Court. A search of the Los Angeles County property records reveals that the Whittier address is not a business address, but a single family residence.[7] YA Global believes that this residence is owned by Carlos Tejeda, Cobalis' current Chief Financial Officer.[8] On July 12, 2011, the Los Angeles Division, *sua sponte*, entered an order transferring the Second Case to this Court.

10. On July 14, 2011, this Court entered Orders to Show Cause in both of the bankruptcy cases, directing Cobalis to appear at a hearing on July 27, 2011 to explain why both cases should not be converted to proceedings under chapter 7.

11. At the July 27 hearing, the Debtor argued that Rule 1017 required additional notice to all creditors before the Court could dismiss or convert the cases.[9] The Debtor further represented

---

[5] *See* Dkt. 815 (notice of default).

[6] Over the last year, Cobalis has consistently used 16795 Von Karman, Irvine as its address for matters pending in this Court. The Von Karman address was also included as a secondary address on Cobalis' petition in the Second Case, so it presumably remains a good address for Cobalis. Cobalis has offered no explanation for why it chose to use the residential address as its primary address on its most recent petition.

[7] *See* Declaration of C. Luckey McDowell dated July 19, 2011 at Docket Entry 833 in the First Case (the "McDowell Declaration") at ¶ 1.

[8] *See* Exhibit A to the McDowell Declaration.

[9] Debtor's argument regarding the application of Rule 1017 in this instance is in error. Courts in this Circuit have consistently held that FED. R. BANKR. P. 1017 has no application when a Court, *sua sponte*, converts or dismisses a bankruptcy case. *See Tenant v. Rojas (In re Tenant)*, 318 BR 860 (B.A.P. 9th Cir. 2004)("the court's authority to dismiss a bankruptcy case *sua sponte* under Section 105(a) is not restricted by Rule 1017(c)"); *Leeward Subdivision Partners v. GDR Lending (In re Leeward Subdivision)*, 2010 WL 6259983, *7 (B.A.P. 9th Cir. June 11, 2010)(affirming dismissal of chapter 11 case, holding that Rule 1017 "does not govern the procedure if the court chooses to proceed

to the Court that Chaim Stern was prepared to post a bond to cover 100% of YA Global's claim, plus future attorney fees, to prevent the Bankruptcy Cases from being converted or dismissed. The Court continued the hearing on its Orders to Show Cause, and on YA Global's Motion for Relief from Stay, to August 22, 2011. In doing so, the Court instructed Cobalis that the Bankruptcy Cases would be converted and/or dismissed at the August 22 hearing unless YA Global had been paid in full prior to that time.

### LEGAL STANDARD FOR CONVERSION OR DISMISSAL

12. The legal standards for converting or dismissing a case are identical: for cause. 11 U.S.C. § 1112(b); *Johnston v. Jem Dev. Co.*, 149 B.R. 158, 161 (B.A.P. 9th Cir. 1992). The purpose of this section is to "cut short" the reorganization process so that creditors do not incur added expenses in a futile effort. *See In re Woodbrook Assoc.*, 19 F.3d 312, 317 (7th Cir. 1994). Where there is no reasonable possibility of reorganization, "the bankruptcy court is not compelled to wait a certain period of time, to the detriment of creditors, before ordering conversion of the case." *Johnston*, 149 B.R. at 162. The Supreme Court has long said that "[h]owever honest in its efforts the debtor may be, and however sincere its motives, the [Court] is not bound to clog its docket with visionary or impracticable schemes for resuscitation." *Tenn. Publ'g Co. v. Am. Nat'l Bank*, 299 U.S. 18, 22 (1936).

13. Section 1112(b) of the Bankruptcy Code now provides that the Court <u>shall</u> convert or dismiss a case for cause, absent unusual circumstances. Prior to 2005, the language of section 1112 was permissive. The 2005 Amendments to the Bankruptcy Code "limit the Court's discretion to refuse to dismiss or convert a chapter 11 case upon a finding of cause." *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 560 (Bankr. M.D. Pa. 2007) (examining in detail the 2005 Amendments to section 1112).

14. Section 1112(b)(4) of the Bankruptcy Code provides a non-exhaustive list of "causes" that require conversion or dismissal. 11 U.S.C. § 1112(b)(4); *Gateway*, 374 B.R. at 561;

---

under its own authority to act sua sponte in accordance with section 105(a)"); *In re Eardley*, 2009 WL 7809924, *5 (B.A.P. 9th Cir. May 11, 2009)(affirming conversion of case on five days notice).

s*ee also In re Brown*, 951 F.2d 564, 572 (3d Cir. 1991) (holding that the factors listed in the prior version of section 1112(b) were not exhaustive and that courts should consider other factors as they arise). In addition to the enumerated factors in section 1112, case law makes clear that a reorganization case must be converted or dismissed if the case was filed in bad faith. *See, e.g., Chu v. Syntron Bioresearch, Inc. (In re Chu)*, 253 B.R. 92, 95 (S.D. Cal. 2000) (converting case to chapter 7 as a bad faith filing). A case also may be converted even after confirmation, as section 1112(b)(4) provides that cause includes a material default under a confirmed plan.

## THE FIRST CASE SHOULD BE CONVERTED

15. The Ninth Circuit recognizes that conversion is appropriate in post-confirmation chapter 11 cases where the reorganized debtor is unable to substantially consummate the plan or where the reorganized debtor materially defaults on the plan. *Pioneer Liquidating Corp. v. U.S. Tr. (In re Consol. Pioneer Mortg. Entities)*, 264 F.3d 803, 807 n.2 (9th Cir. 2001) (citing 11 U.S.C. § 1112(b)(7) and (8), the pre-BAPCA versions of 11 U.S.C. § 1112(b)(4)(M) and (N)).

### A.  *Substantial Consummation*

16. The Debtor has largely ignored its obligation to file periodic post-confirmation reports updating the Court and creditors regarding consummation of its Plan. Without that information, creditors—and the Court—are left largely without the information necessary to determine whether the Plan has been substantially consummated, which Cobalis now exploits.

17. Cobalis argues both sides of the issue, depending on the circumstances. For example, at the July 27 hearing Cobalis argued that it had not substantially consummated the Plan, because that would be fatal to any attempt to modify its Plan. *See* 11 U.S.C. § 1127(b).

18. However, failing to substantially consummate the Plan also is cause for conversion or dismissal. *See* 11 U.S.C. § 1112(b); *see also In re Consol. Pioneer Mortg. Entities*, 264 F.3d at 806 (affirming conversion for failure to consummate a plan and holding "that conversion to Chapter 7 was necessary to ensure open and full financial disclosure"); *see also In re Mobile Freezers, Inc.*, 146 B.R. 1000, 1004 (S.D. Ala. 1992) (bankruptcy court abused discretion to not convert where the debtor could not substantially consummate confirmed plan). Therefore, for these purposes, Cobalis

may argue that it has consummated the Plan through $1.5 million in payments to the YA Global escrow account and reduction of $2.1 million in other unsecured claims.

19.  Regardless of Cobalis' newest position, Cobalis' failure to make the post-confirmation reports required by the Plan, confirmation order, and applicable rules provides an independent basis for conversion and dismissal. *See* 11 U.S.C. §§ 1112(b)(4)(E) and (F).

**B.    *Cobalis has materially defaulted on the Plan***

20.  Cobalis' Second Case was triggered by its inability to make the July 2011 escrow payment required by the Confirmation Order, constituting an indisputable default under its Plan. This was not the first time Cobalis has defaulted on that obligation—**Cobalis failed to make a single payment on time, defaulting each and every month for the last year**.[10]

21.  These material defaults stem from Cobalis' inability to generate sales of PreHistin. A reorganized debtor's failure to recognize sales from its sole source of revenue—preventing it from making plan payments—constitutes a material default of the plan. *See, e.g., Greenfield Drive Storage Park v. Cal. Para-Prof'l Servs., Inc. (In re Greenfield Drive Storage Park)*, 207 B.R. 913, 917 (B.A.P. 9th Cir. 1997) (converting case where reorganized debtor lost the ability to generate revenue from its sole asset due to a post-confirmation foreclosure); *Smith v. Lee (In re Smith)*, 201 B.R. 267, 270 (D. Nev. 1996) (converting case where reorganized debtor failed to timely market and sell its assets as projected by its confirmed plan); *Spicer v. Laguna Madre Oil & Gas II, LLC (In re Tex. Wyo. Drilling, Inc.)*, 422 B.R. 612, 619-20 (Bankr. N.D. Tex. 2010) (converting case *sua sponte* for reorganized debtor's material default of plan); *In re Mobile Freezers*, 146 B.R. at 1005 (bankruptcy court abused discretion to not convert for material default where proposed post-confirmation asset sale was inconsistent with terms of the plan).

**C.    *Unauthorized Use of Cash Collateral***

22.  By affidavit dated July 26, 2011, Cobalis introduced evidence of purported sales of PreHistin approaching $1 million. To the extent the Debtor still has any of those funds, the money

---

[10] *See* Dkts. 613, 628, 669, 701, 714, 730, 739, 755, 781, 791, 805.

is YA Global's cash collateral. This Court repeatedly held that YA Global holds a first-priority, validly perfected security interest in Cobalis' assets, which includes the PreHistin inventory. Proceeds from the sale of PreHistin, therefore constitute YA Global's cash collateral.

23.  The Debtor is prohibited from spending any cash collateral without either (i) Court order or (ii) YA Global's consent. YA Global has not given any such consent. To the contrary, YA Global has repeatedly requested that Cobalis immediately account for all of its cash and post-petition expenditures. To-date, the only response that YA Global has received is an email from Cobalis' counsel indicating that his client is not responding to his requests for a budget.[11]

24.  The unauthorized use of cash collateral constitutes cause for conversion or dismissal. 11 U.S.C. § 1112(b)(4)(D). YA Global reserves the right to introduce evidence at the hearing to establish that Cobalis has used YA Global's cash collateral without authorization.

## D.     Insufficient Insurance

25.  Failure to maintain sufficient insurance that poses a risk to the estate or the public also provides independent grounds for conversion or dismissal. 11 U.S.C. § 1112(b)(4)(C). Since December 2010, the Debtor has been selling a pharmaceutical product to the general public for the treatment of allergies and other symptoms.[12] Placing a health product into the stream of commerce necessarily exposes the public, and the debtor's estate, to potential damages. Yet, the Debtor has provided the Court with no evidence of the type, amount, and terms of its insurance coverage, if any. YA Global reserves the right to introduce evidence at the hearing to establish that Cobalis has failed to maintain sufficient insurance.

## THE SECOND CASE SHOULD BE DISMISSED

## A.     The Second Case was intended to deter and harass creditors

26.  The Second Case should be dismissed as a bad faith filing. In addition to the enumerated "causes" in section 1112(b)(4), a finding that a debtor filed a chapter 11 petition in bad

---

[11] See *See* Exhibit B to the McDowell Declaration.

[12] While the Debtor may try to shy away from such a description in fear of selling a product in violation of FDA guidelines, this Court has repeatedly heard testimony and seen evidence for the last four years about this product and understands that the Debtor markets PreHistin to allergy sufferers.

faith may, standing alone, justify dismissal. *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994); *In re Chu*, 253 B.R. at 95. A determination of bad faith requires a case-by-case assessment of multiple factors, focusing on whether the case was filed to "unreasonably deter and harass creditors." *Id.*

27. Cobalis' Second Case is riddled with the hallmarks of bad faith. By relying on an employee's residential address to avoid this Court's jurisdiction, Cobalis gave the Court a flavor of the cynicism behind the Second Case. The Los Angeles Division quickly transferred the case to this Court, but the indicia of bad faith do not end there. As noted in YA Global's pending *Motion for Relief from the Automatic Stay*, Cobalis demonstrated substantive bad faith by commencing the Second Case because:

- Cobalis apparently failed to consummate its plan of reorganization;
- Cobalis failed to achieve its financial projections;
- Cobalis' second bankruptcy filing amounts to a collateral attack on this Court's confirmation order because the debts are substantially identical;
- Cobalis' property has been posted for foreclosure;
- Cobalis wants to delay an unfavorable opinion against it in the securities adversary action against YA Global;
- the petition allows Cobalis to avoid—at least temporarily—this Court's carefully balanced protections for YA Global in the Confirmation Order; and
- Cobalis has no possibility of reorganizing.

28. Each of these factors supports a finding that Cobalis filed the Second Case in bad faith, thereby empowering the Court to dismiss the Second Case pursuant to its Show Cause Orders. *See In re Chu*, 253 B.R. at 95 (listing many of the above elements as recurrent factors that accompany bad faith filings).

29. The Court may also dismiss the Second Case as an improper simultaneous filing. Although the pendency of a simultaneous case is not a *per se* bad faith filing in the Ninth Circuit, it is one factor that the Court may consider in its case-by-case analysis. *In re Studio Five Clothing Stores, Inc.*, 192 B.R. 998, 1007 (Bankr. C.D. Cal. 1996) ("obviously the fact that a case is a

successive filing can be taken into account by the court in determining whether or not the subsequent case is a "bad faith" filing").[13] For example, in *In re Delaware Valley Broadcasters*, the debtor showed "virtually a complete inability to consummate its plan" and defaulted almost immediately after confirmation. *In re Del. Valley Broad. Ltd. P'Ship*, 166 B.R. 36, 39 (Bankr. D. Del. 1994). The debtor filed a second bankruptcy case, even though the first case remained open, no final decree had been entered, and numerous pleadings related to significant post-confirmation matters remained pending. *Id.* The second case proposed a second treatment for the identical debts treated in the first case. *Id.* at 39-40. The bankruptcy court held that it must "draw the line based on good faith and common sense" at one case. *Id.* at 40. The bankruptcy court rejected the debtor's argument that a pending post-confirmation foreclosure constituted "unusual circumstances" preventing dismissal, noting that "the foreclosure action was within the creditors' remedies upon default pursuant [to] the agreement incorporated into the plan." *Id.* at 41. The bankruptcy court dismissed the later filed case, concluding that "[w]hile there may be no express statutory prohibition against simultaneous filings, lack of changed circumstances, common sense and equitable considerations militate against such an occurrence in this instance." *Id.*

30. Cobalis' situation is nearly indistinguishable from *Delaware Valley Broadcasters*: Cobalis has filed a second, simultaneous bankruptcy case to avert a foreclosure expressly authorized under its confirmed but unconsummated Plan. Although dismissal is not mandatory under *Grimes*, Cobalis' Second Case is the type of egregious conduct that warrants dismissal of its second case— dismissal that is well supported under the totality of circumstances.

**B.    *The Second Case should be dismissed, not converted***

31. Cobalis' simultaneous—rather than serial or successive—filings create a host of procedural burdens that make dismissal of the Second Case in the best interests of Cobalis'

---

[13] In *In re Grimes*, the B.A.P. held that a debtor could file a chapter 12 bankruptcy before the debtor's pervious chapter 11 plan was substantially consummated because the debtor had received a discharge in the chapter 11 case. *Grimes v. United States (In re Grimes)*, 117 B.R. 531, 536 (B.A.P. 9th Cir. 1990). Neither the Ninth Circuit nor the Bankruptcy Appellate Panel has ruled on the efficacy of maintaining simultaneous chapter 11 cases. Maintaining two simultaneous chapter 11 cases—as differentiated from serial or successive filings—has, as discussed herein, justified dismissal in other circuits.

creditors. Although converting the Second Case (as well as the First Case) does provide creditors with a remedy for Cobalis' bad faith, conversion would create practical problems that the Court, the chapter 7 trustee and creditors can avoid through dismissal.

32. Converting the Second Case unnecessarily complicates the administration of the estates, and potentially jeopardizes the prompt and efficient resolution of the First Case because the Court and parties in interest will be forced to reconcile the claims of two cases' creditors with the assets of a single debtor. For example, converting the Second Case will force the parties to deal with potential cash collateral issues during the pendency of the Second Case, as YA Global holds a lien on any proceeds from sales of Cobalis' inventory. On the other hand, dismissal of the Second Case allows the parties to avoid cash collateral issues altogether, as the Second Case will be treated as though it had never been filed.

33. Further, converting both cases might require the appointment of two separate chapter 7 trustees because of conflicting fiduciary duties and potential conflicts of interests as creditors in each estate will have different arguments about their relative priorities. For example, if only the First Case is converted, the relative priority of creditors is relatively easy to determine; however, if both cases are converted creditors in the Second Case may argue that their claims are now elevated to the same level as the unpaid administrative creditors from the First Case since their claims now arise under a plan and may not be prepetition claims. Moreover, dismissal allows the parties and the Court to avoid issues related to the potential consolidation of two cases differentiated by four years' worth of litigation. *See* Fed. R. Bankr. P. 1015(a). Which trustee, for example, would control the pending litigation asserted against YA Global? And, should expenses—or recoveries—from that litigation be allocated to the estate of the First Case or the estate of the Second Case? These head-scratching questions—along with potentially protracted litigation—can be avoided altogether with the prompt dismissal of the Second Case. *See Shulkin Hutton, Inc., P.S. v. Treiger (In re Owens)*, 552 F.3d 958, 960 (9th Cir. 2009) (once cause is shown, bankruptcy court enjoys wide discretion to order dismissal rather than conversion).

## CONCLUSION

34.    For the reasons stated herein, YA Global respectfully requests entry of orders converting the First Case to a proceeding under chapter 7 of the Bankruptcy Code and dismissing the Second Case. YA Global requests all other relief that is just and proper.

Respectfully submitted this 28th day of July 2011.

                  VENABLE LLP
                  KEITH C. OWENS

                  BY: */S/ KEITH C. OWENS*
                          KEITH C. OWENS

                  BAKER BOTTS L.L.P.
                  C. LUCKEY MCDOWELL

                  COUNSEL TO YA GLOBAL INVESTMENTS, L.P.